Baldwin, Justice,
 

 delivered the opinion of the court. — The action in the court below was brought to try title to a tract of land, in Abbeville district, claimed by the plaintiffs, under the will of Henry Laurens ; and by the defendant, in virtue of a possession of five years, which, by the limitation law of South Carolina, gives a good title.
 

 On the trial of the cause, it appeared, that ;Henry Laurens, being seised
 
 *100
 
 in fee of the premises in controversy, devised the same to his daughter, Mrs. Ramsay, and to Dr. Ramsay, “ to hold the same, to them and their heirs, in trust for the use and behoof of his grand-daughter, Frances Eleanor Laurens, wife of the plaintiff, during her life, &c.” On the 23d of October 1822, the heirs of David Ramsay, claiming by the will aforesaid, brought their action against the defendant, in the state court of South Carolina, to recover the land claimed by him, which was part of a larger tract of land, devised to Mrs. Hen'derson by the will of Mr. Laurens. The supreme court, on argument, decided that the legal estate was in those for whose use it was devised, and that the action could not be sustained in the name of the heirs of Ramsay,
 
 Ramsay and others Trustees
 
 v.
 
 Marsh,
 
 2 McCord 252. ^Whereupon, the suit was discontinued, on the 23d 0 J of October 1822. At the commencement of that suit, five years had not expired from the time of the defendant’s entry on the land ; but they had expired when the present action was brought, on the 29th of May 1823 : so that the only question arising in this action is, whether the two suits can be so connected, that the present can relate back to the former one, and thus bring it, by legal intendment, within the five years. The circuit court being of opinion, that the two suits could not be connected, a verdict and judgment passed for the defendant; and this is the only error assigned.
 

 The plaintiffs in error rest their case on the following clause of an act of assembly of South Carolina, passed in 1744. (2 Brevard’s Digest 24.) “And in case verdict and judgment shall pass against the plaintiff in such action, or that he suffers a nonsuit or discontinuance, or any otherwise lets falx the same, such verdict or j udgment, nonsuit or discontinuance, or other letting fall the action or suit aforesaid, shall not be conclusive and definitive on the part of such plaintiff ; but at any time within two years, the said plaintiff, or any other pei-son or persons claiming by, from and under him, shall have right, and is hereby empowered to commence his action for the recovery of the said lands and tenements
 
 de novo,
 
 and pi’osecute the same, in the manner, and with the expedition, lxerein-before directed.”
 

 The supreme coui’t of that state have decided that this law is considered as a part of the limitation act of 1712, and that a suit commenced within the time prescribed ari;ests the limitation
 
 (Edson
 
 v.
 
 Davis,
 
 5 McCord 555-6) : and this being a decision of their highest judicial tribunal on the construction of a state law isolating to titles and real property, it must be adopted by us, as the rule to guide our judgment; and this brings the merits of this case to this single question, whether the plaintiffs claim by, from or under David Ramsay’s heirs?
 

 The opinion of the court in the case of
 
 Kennedy
 
 v.
 
 Marsh,
 
 was an able and deliberate one; it was a judicial construction of the will of Mr. Laurens, according to their view of the rules of the common law in that state, as a rule of property, and comes within the principle adopted by this court in
 
 Jackson
 
 v.
 
 Chew,
 
 12 Wheat. 153, 167, that such decisions ^ . are ^entitled to the same respect as those which are given on the -* construction of local statutes. By so considering it, and adopting it as a rule by which to decide this case, it follows, conclusively, that if there was no such estate in the heirs of Dr. Ramsay as would authorize them to sustain an ejectment under this will, in their own names, the trust in the will was one clearly executed in Mrs. Henderson. By the settled rules of
 
 *101
 
 courts, both of law and equity, as applied to the statute of uses of 27 Hen. V1IL, c. 10, in force in South Carolina, there was, according to the principle of the decision of the state court, nothing executory in the trust. Mr. or Mrs. Ramsay were to do no act, before both the legal and beneficial interest vested in the devisee in trust. The estate never vested in them for a moment, but passed directly to the objects of the trust, as soon as the will took effect by the death of the testator. The interposition of the names of Mr. and Mrs. Ramsay, had no other legal operation than to make them the conduits through whom the estate was to pass. The application of the statute of Henry VIII. to a will, gives it the effect of a deed of bargain and sale to uses ; they are only modes of passing title. Having no legal operation to vest the legal estate in the names used as the conduits or instruments of conveyance, the effect of cither would be the same, if the grant or devise were made directly to the purposes and uses declared, transferring both the title and possession. “ The statute conveys the possession to the use, and transfers the use into possession, thereby making the
 
 cestui que use
 
 complete owner of the lands and tenements, as well at law as in equity. The possession thus transferred is not a mere seisin or possession in law, but an actual seisin and possession in fact; not a mere title to enter upon the land, but an actual estate.” 2 McCord 254.
 

 This decided opinion of the highest court of South Carolina renders it unnecessary for this court to express their own opinion on this will. Thus construed, neither Mr. nor Mrs. Ramsay ever had, and their heirs never could have, any right or estate in the premises so devised by Mr. Laurens, in law or equity — no right of entry, possession or ultimate enjoyment. They could not take the rents and profits, as the entire estate of the devisor vested in the devisee ; they could, therefore, sustain no ejectment, which must be founded on a right of ^possession. Mrs. Henderson is a purchaser, directly under the will of her grandfather, deriving all her rights *• from him. There being not a spark of right in the Ramsays, she could by no possibility claim by, from or under them. There was no privity of estate between them; the Ramsays formed no link in the chain of title from the person last seised to the plaintiff. They were as much strangers to the estate in law, as if their names were not to be found in the will ; and there could be, in no principle of law, any connection between the present and the former suit. The case contemplated in the law of 1744 is clearly one whore the right of the plaintiff in the first suit passes to the plaintiff in the second, where it must depend upon some interest or right of action, which has become vested in him by purchase or descent from the person claiming the land in the former suit. ■
 

 These are the views which inevitably result from the local laws, expounded by the highest court in the state ; in accordance with which, the right of Mrs. Henderson was as perfect on the death of Mr. Laurens, as it could be afterwards. She might have supported her ejectment against Griffin, at the time when the heirs of Ramsay brought theirs ; and this is not the case provided for by the law; which, in our opinion, applies only to the case of a suit brought to enforce a right derived from the first plaintiff. To give the law any other interpretation would be to establish in South Carolina the principle, that an action brought by a person having no right, title or interest in laud, in the actual possession of a person claiming it for
 
 *102
 
 himself, would arrest the act of limitation, and prevent its running on the right of a stranger to the suit. It would be doing violence to the law, to give it this meaning.
 

 The plaintiffs’ counsel seem to consider this as a case where the first ejectment was brought by a trustee, and the second by a
 
 cestui que trust;
 
 but this is not such an one. If the construction given to the will is to be considered as the law of the case, the will of Mr. Laurens did not sever his interest in the estate devised to his grand-daughter; the legal was not separated from the equitable estate ; but the whole passed unbroken by the will. So that the relation of trustee and
 
 cestui que trust
 
 never subsisted. The utmost extent of the argument drawn from this alleged analogy in favor of the ^plaintiff would be, that the heirs of Ramsay brought J the first suit in assertion of the title of Mr. Laurens, but for the want of privity, they could not bring it to bear on the defendant, in their names. It would be quite a new principle in the law of ejectment and limitation, that the intention to assert the right was equivalent to its being actually done.
 

 It is settled law, that an entry on the land, by one having the right, has the same effect in arresting the progress of. the limitation as a suit ; but it cannot be sustained as a legal proposition, that an entry by one having no right, is of any avail. If the use or trust was executory ; if the legal title had remained in the Ramsays, as trustees, until they had done some act to vest it in the devisee, as the
 
 cestui que trust,
 
 there would be great force in the reasoning of the plaintiffs’ counsel. But here there is no estate devised to Mr. and Mrs. Ramsay in trust. The statute, according to the local law of South Carolina, operates to make the devise directly to Mrs. Henderson.
 

 The only remaining point made by the plaintiffs, is that which arises from the following rule made by the circuit court in this cause, on the 21st of November 1823. “On reading the affidavit of Henry Gray, it is ordered that the plaintiffs show cause, on Monday morning, why all proceedings in these cases should not be stayed, until the costs of the action prosecuted in the names-of the heirs of David Ramsay, by the same plaintiffs, in the state court, against the same defendants, be paid.” In pursuance of which rule, the plaintiffs paid the costs in the action referred to. Assuming the fact stated in the rule to be true, that the plaintiffs brought these suits in the name of David Ramsay’s heirs, it shows no more than that it was a cáse which, by the rules and practice of all courts, authorized the order made by the circuit court. Costs had accrued to the defendant, by a suit brought and prosecuted by the plaintiffs in this suit, in the name of those who had no right to the land. It was perfectly consistent with the justice of the case, that when these plaintiffs sued the same defendant, in their own name, for the same land, they should reimburse him for the past costs to which they had subjected him, before they should be permitted to proceed further. Rules of this kind are granted by courts to meet the justice and exigencies of cases as they occur, not depending ^solely on the interest which
 
 °
 
 J those who are subjected to such rules may have in the subject-matter of suits which they bring and prosecute in the names of others ; but on a variety of circumstances which, in the exercise of a sound discretion, may furnish a proper ground for their interference. A rule on A., to pay the costs of a suit in the name of B., is no judicial decision that he had any
 
 *103
 
 interest in the subject, or that it was identical with one afterwards brought by A., in his own name, for the same property. It was the exercise of a summary power to compel what, under the circumstances of the particular case, tlie court consider to be justice to a party, in defending himself against an unfounded claim. The case before the circuit court was a proper one for the exercise of their discretionary powers, but their rule can have no possible bearing on the question in issue between the parties in the action.
 

 It is, therefore, the opinion of the court, that there is no error in the record ; the judgment of the circuit court is affirmed, with costs.
 

 This cause came on to be heaz’d, on the transez-ipt of the z-ecord from the circuit court of the United States for the district of South Carolina, and was argued by counsel: On consideration whereof, it is the opinion of this couz't, that there is no error in the judgment of the said circuit court; whereupon, it is considered, ordered and adjudged, that the judgment of the said circuit court in this cause be and the same is hereby affii-med, with costs.