| 61 | 155 |
| 81 | 129 |
| 81 | 472 |
| 61 | 155 |
| 83 | 547 |
| 61 | 155 |
| 87 | 77 |
| 87 | 270 |

R. L. PARKER ET AL. v. J. L. SPENCER ET AL.

(Case No. 1734.)

1. FINAL JUDGMENT — APPEAL.— A judgment dismissing a suit is a final judgment from which an appeal can be taken.
2. RES ADJUDICATA.— A judgment on demurrer which goes to the merits of a petition or answer is as conclusive a former adjudication as would be a judgment on the merits, and is binding upon the parties until reversed, vacated or set aside.
3. VOID JUDGMENT — COLLATERAL ATTACK.— One against whom a judgment is rendered, in proceedings to which he was not made a party in any of the modes recognized by statute, and who was represented by an attorney having no authority to represent him, may either have the judgment vacated by direct proceedings begun for that purpose, or treat it as void in any collateral proceeding against him, in which rights under the judgment are asserted against him.
4. LAND CERTIFICATE.— A parol partition of a land certificate before its issuance between several entitled to an interest therein, which determined the interest of each, which was acted on by them, recognized, conveyances made in pursuance thereof and possession taken, is binding on the parties to such partition.

5. REGISTRATION — DEED — LIMITATION.— A deed for land, the purchase money on which had not been paid, was delivered to an attorney, who at once re-corded and retained the same, with directions to deliver it formally when the purchase money was due, two years thereafter. *Held*, that the final de-livery two years after the execution of the deed related back to the date of its execution and registration, so as to constitute the possession of the pur-chaser a holding under a deed duly recorded.

6. ARCHIVES.— All transfers of land certificates on file in the general land office are, under the fourth section of the act of June 2, 1873, archives of that office, and certified copies thereof are admissible in evidence as the originals would be.

7. STATUTE CONSTRUED.— The statute which requires that pleadings may be amended before the parties announce themselves really for trial and not thereafter is directory, and the action of the district court in allowing an amendment after an announcement of ready for trial, which has become necessary to attain the ends of justice, will afford no cause for reversal. Following Whitehead *v.* Foley, 28 Tex., 10.

8. SALE OF LAND CERTIFICATE.— A verbal sale of a land certificate conveys the vendor's right thereto. And in 1838 the assent of the husband to a verbal sale by the wife of her interest in a land certificate need not have been in writing. In this case, after the lapse of nearly forty years, such assent was presumed, it being shown that the husband was aware of the sale.

9. STALE DEMAND.— One who for a period of thirty-seven years sleeps upon his claim to an interest in a land certificate, an adverse right to which is openly asserted, and who during all that period makes no effort to repel the assertion of the adverse claim, cannot afterwards be heard to assert his rights. For facts on which this is announced see statement and opinion.

APPEAL from Grayson. Tried below by the Hon. A. C. Turner, special judge.

The following, adopted from the brief of appellants, together with the further statements contained in the petition, will suffi-ciently show the nature and result of the suit:

On the 11th day of November, 1875, George Lary and others, the appellants in this case, except Bledsoe, Head, Taylor, Oneal and Parker, filed their petition in trespass to try title against a number of persons, among whom were appellees J. L. Spencer and D. T. Bo-mar, to recover one-third of a league of land, located and patented by virtue of certificate No. 515 issued to the heirs of Sherrod Dunman for one league and labor. The plaintiffs in that case claimed to be descendants of Amy Dunman, the wife of Sherrod Dunman, by a former marriage; that the certificate was community property of Sherrod and Amy Dunman; that Sherrod and Amy Dunman had one child named Riley, who survived his father but died before his mother, never having married; that they are therefore entitled to all the land, but if they do not own all of it, they were tenants in common with those who owned the balance, and were entitled to

recover against defendants, who were strangers to them. Appellees Spencer and Bomar each claimed five hundred and eight acres of land sued for in that suit, Spencer claiming under warranty deed from Bomar. In that suit answers were filed for appellees by Woods, Fears & Wilkinson, attorneys in that court. On the 23d day of May, 1878, an agreed judgment was rendered, giving to the plaintiffs all the land claimed by Bomar in his pleadings, and none of that claimed by Spencer. After this decree was rendered a number of transfers were made by the plaintiffs of parts of the land decreed to them, and on the 30th day of November, 1878, W. W. Taylor by purchase became the owner of the principal part of it. On the 22d day of September, 1879, D. T. Bomar instituted suit in the district court of Grayson county to set aside that agreed judgment for the same reason set forth in his cross petition in this suit, and in September, 1879, on demurrer of the defendants, who were the appellants in this case, his petition was dismissed, the injunction dissolved and judgment final rendered against him for costs.

On the —— day of January, 1879, Spencer instituted this suit to set aside the agreed judgments against him, making Bomar a party defendant. Bomar answered admitting the allegations of Spencer, and in a cross petition asked that the judgment be also set aside as to him. The grounds relied on for vacating the judgment by Spencer and Bomar are the same, except that Spencer says Woods, Fears & Wilkinson had no authority whatever to represent him in the case in any manner, and Bomar admited that they were his attorneys to represent him in the case, but said they had no authority to make the compromise. The material allegations relied on to vacate the judgment by both Spencer and Bomar were these: 1st. Want of authority in the attorneys to make the compromise as above indicated. 2d. That some of the depositions that influenced their attorneys to make the compromise were taken by R. L. Parker, who had at the time a contract with the plaintiffs for part of the land conditioned on recovery, and also that Parker at the time was not a legal officer, having been qualified as a member of the legislature; they also. charged that these depositions were influenced in material respects by Parker to their injury. 3d. Spencer alleged that there was a mistake in the judgment, and in his answer from which it was drawn, in that they divided the one thousand and sixteen acre tract owned by him and Bomar by a line running east and west, when it should have been divided by a line running north and south, but he did not offer to correct the mistake. To show title to the land and

that they were injured by the compromise judgment, they claimed :
1st. That Sherrod Dunman left no child surviving him.   2d. That
in 1837 or 1838 there was a partition among the heirs of Sherrod
Dunman of the certificate, or of their right to a certificate, in which
Nancy McFarland, who was a sister of Dunman, received one-third
of the certificate which had been or might be issued.   The names
of the heirs of Sherrod Dunman, or their respective interests in the
certificate, were nowhere given either by plaintiff or Bomar, nor any
of the circumstances attending the partition.   3. That Nancy Mc-
Farland in 1838, with the consent of her husband, sold her one-third
interest in the certificate to A. D. Duncan; that Duncan sold to
Wm. Pulliam; that Pulliam sold an interest in the certificate to
A. Larkin; that Pulliam and Larkin located this land and had it
patented for themselves by virtue of their interest in the certificate,
and that appellees claimed under regular chain from them.   Also
that Duncan, Pulliam and Larkin held the certificate for more than
two years before its location, and thereby acquired title by limita-
tion.   They also claimed to have acquired title by the three, five
and ten year statutes before the institution of the suit against them,
and that the plaintiff's demand in the suit against them had become
stale before the institution of that suit.

Appellants filed general demurrer and a number of special ex-
ceptions applying to each point made in the pleading of Spencer
and Bomar, but all these of any importance were overruled except
the one to the two years' statute by which title to the certificate was
claimed.   They also filed a general denial and specially pleaded the
merits of their original case; set up the infancy and coverture of
their ancestors; claimed that the mistake in the decree was caused
by no fault of theirs, but by plaintiff and Bomar describing the land
wrong in their pleading in the original suit, but proposed to correct
all mistakes.   Defendant Taylor also claimed to be an innocent pur-
chaser of the part of the land claimed by him.   Several exceptions
were taken to the rulings of the court during the trial, among which
were the twice permitting plaintiff and Bomar to amend their plead-
ing during the progress of the trial without withdrawing their an-
nouncement or imposing terms on the privilege of amending at that
stage of the trial.   The case was submitted to the jury upon thirty
special issues, and upon the findings of the jury upon these the court
rendered judgment setting aside the compromise decree, and in
favor of plaintiff Spencer and defendant Bomar for all the land
claimed by them, and adjudged these appellants to pay all the costs
of this and the original suit.   On the overruling of their motion for

a new trial, appellants, who were defendants in the court below, gave notice of appeal in open court and perfected their appeal by giving bond as required by law.

*Hare & Head*, for appellants, cited on setting aside the decree: Peters v. Clements, 52 Tex., 142, 143; Page v. Arnim, 29 Tex., 53; Burleson v. Burleson, 28 Tex., 416; Scoby v. Sweatt, 28 Tex., 713; Mayer v. Ramsey, 46 Tex., 375; Dodd & Co. v. Arnold, 28 Tex., 97; Goss v. McLaren, 17 Tex., 107; Roller v. Wooldridge, 46 Tex., 485; Robertson v. Smith, 11 Tex., 217; Drinkard v. Ingram, 21 Tex., 650; Bremond v. McLean, 45 Tex., 17; Eccles v. Daniels, 16 Tex., 140; Hillebrant v. Burton, 17 Tex., 140.

On the verbal partition of the certificate, they cited: Barrett v. Kelly, 31 Tex., 480; Galveston City Company v. Scott, 42 Tex., 535.

On amending pleading after trial began, they cited: R. S., art. 1192; Love & Chappell v. McIntyre, 3 Tex., 12, 13; Jennings v. Moss, 4 Tex., 454; De Witt v. Jones, 17 Tex., 623, 624.

That an escrow recorded is not a deed duly registered, they cited: Kelly v. Medlin, 26 Tex., 48; Castro v. Wurzbach, 13 Tex., 131; Winters v. Laird, 27 Tex., 619; Wofford v. McKinna, 23 Tex., 43; 3 Washburn on Real Property, 270.

That a legal demand never becomes stale, they cited: Moss v. Berry, Tex. Law Journal, vol. 4, p. 229; Williams v. Conger, 49 Tex., 602; Shepard v. Cummings, 44 Tex., 502.

*Woods, Wilkins & Cunningham* and *J. P. Hill*, for appellees, cited on verbal partition: Hudson v. Jurnigan, 39 Tex., 579; Glasscock v. Hughes, 5 L. J., 339; Farris v. Gilbert, 50 Tex., 356; Roller v. Wooldridge, 46 Tex., 485; Freeman on Judgments, secs. 99, 486, 489, 491, and authorities cited.

That a verbal sale of the certificate was valid, they cited: Cox v. Bray, 28 Tex., 261; Watkins v. Gilkerson, 10 Tex., 340; Evans v. Hardeman, 15 Tex., 480; Miller v. Roberts, 18 Tex., 16; Bullion v. Campbell, 27 Tex., 653; Monroe v. Searcy, 20 Tex., 348; Smock v. Tandy, 28 Tex., 131; Stuart v. Baker, 17 Tex., 417.

On stale demand, they cited: Vogelsang v. Dougherty, 46 Tex., 466; Hudson v. Jurnigan, 39 Tex., 579; Moss v. Berry, 4 Law Journal, p. 229; Veramendi v. Hutchins, 48 Tex., 531; Mann v. Falcon, 25 Tex., 274; Hines v. Perry, 25 Tex., 451; Parks v. Willard, 1 Tex., 354; Powell v. Haley, 28 Tex., 57; Wethered v. Boon, 17 Tex., 149; Briscoe v. Bronaugh, 1 Tex., 332; Stroud v. Springfield, 28 Tex., 649; Wade on Notice, sec. 672.

WATTS, J. COM. APP.— After the consent decree was entered in the case of George Lary *et als. v.* C. C. Binkley *et als.*, the appellee Bomar brought suit in the district court of Grayson county against all the other parties to that decree, in which he sought to have the same vacated and the cause tried upon its merits. The grounds upon which he sought the relief were these: That his attorneys were not authorized to make the compromise and consent to the decree; that certain testimony taken by deposition by plaintiffs in that case was false, in this, that it was therein shown that Riley Dunman, the son, died after the death of his father, Sherrod Dunman; that R. L. Parker, who took the depositions, was interested in the result of the suit, and that the plaintiffs and their attorneys knew at the time and before the entry of the decree that the evidence was false and that Parker was interested, and concealed these facts from his attorneys, who, not knowing of the falsity of the evidence or Parker's interest in the subject matter of the controversy, were thereby deceived, and, by the plaintiffs therein urging a trial, his attorneys were induced to make the compromise and consent to the decree. That in fact Riley Dunman died before his father, Sherrod Dunman, which fact he could establish by evidence discovered since said decree was rendered. Also that Parker, who took and superintended the taking of said depositions, was interested with the plaintiffs in the result of that suit, which he nor his attorneys knew or could have known by any reasonable diligence until some time after the decree was rendered, and that there was a mistake in the decree as to the description of the land adjudged to Spencer, his vendee. On September 22, 1879, general and special exceptions were sustained to Bomar's original and amended petitions, and judgment was rendered dismissing his case, dissolving an injunction theretofore granted in his behalf, and judgment for costs of the suit. To that judgment Bomar excepted and gave notice of appeal, but no appeal was perfected.

In his cross-bill in this case he sought to have the consent decree vacated and the cause tried on its merits, upon the same grounds that he asserted in his suit. To this cross-bill he appended as exhibits all the pleadings and judgment in the case brought by him, and also therein stated the history and result of that case.

Appellants excepted specially to the cross-bill of Bomar, on the ground that it appeared from the same that as to him the matters therein set up were *res adjudicata*. This exception was overruled and exceptions saved to the ruling.

In accordance with the previous decisions in this state, the judg-

ment against Bomar, dismissing his petition, etc., must be considered as a final judgment, from which an appeal could have been taken. Hanks v. Thompson, 5 Tex., 6; West v. Bagby, 12 Tex., 34; Bradshaw v. Davis, 12 Tex., 344; Hagood v. Grimes, 24 Tex., 16.

A judgment on demurrer may be as conclusive as a former adjucation as would a judgment on the facts, but to have that effect it must clearly appear that the demurrer went to the merits of the action or defense, otherwise it would be presumed that the objection was to the form, and not to the merits. Res Adjudicata and Stare Decisis, by Wells, sec. 446.

Here there were general and special exceptions taken, and all sustained, to Bomar's petition and amendments. And upon further amendment, curing in part the objections pointed out by the special exceptions, the general and special exceptions were again renewed and were all sustained. An examination of the pleadings in that case very clearly and distinctly shows that the court, in passing upon the demurrers, considered them as going to the merits of the case, and by the ruling held that there was no cause of action stated in the petition and amendments.

Now, as to the correctness of that ruling, we have nothing to say, for that judgment is final and conclusive as between the parties thereto until it is reversed, vacated or set aside. This clearly appears from Bomar's cross-bill and attached exhibits, and the court below should have sustained the special exceptions taken to the same. As to the appellee Bomar this disposes of the case, but as to appellee Spencer other questions are presented for determination. In the consideration of this branch of the case very many of the objections urged will be pretermitted as immaterial errors in no way affecting the result.

In response to special issues the jury found that Spencer was not represented by any authorized attorney in the suit wherein the consent decree was rendered, and that he had not been served with process, and that the party who had accepted service for him did so without authority, and the attorneys who appeared for him were not authorized by him to make such appearance, or to represent him in the suit. There is sufficient evidence in the record to sustain that finding, and to the admissibility of which no objections were made. And as he had not been made a party to the suit by any of the modes known to the law, he would not be bound by the judgment. But he had the option either to have it vacated by direct proceeding or else to treat it as void in any collateral proceeding where rights might be asserted against him by reason of the same.

It clearly appears that, after the death of Sherrod Dunman, there was an agreement between Mrs. Amy Dunman and his sister,. Mrs. McFarland, by which the certificate, though not issued, was partitioned between them, and by which the latter was to have one-third of the certificate. This is also affirmed by the special finding of the jury.

It matters not whether that agreement was verbal or in writing, for, as appears from the evidence and findings of the jury, the parties acted in pursuance of the same. Mrs. McFarland, with the consent of her husband, sold her one-third interest in the certificate to Duncan, and, as shown by the evidence and affirmed by the verdict, Mrs. Amy Dunman knew of that sale and acquiesced in the sale; and it is not shown that she ever thereafter asserted any claim whatever to that interest in the certificate. The evidence sustains the findings of the jury to the effect that Duncan sold that interest in the certificate to Pulliam, and Pulliam to Larkin, and that the latter located the same upon the land in controversy and procured the issuance of the patent therefor to the heirs of Sherrod Dunman.

It also appears from the evidence as affirmed by the jury, that Everts purchased the land from Larkin in 1852 and went into the actual possession at once under recorded deed, and in 1854 sold and conveyed the same to the Bomars. The conveyance was duly recorded and they went into the immediate actual possession, and that possession was continued until 1864.

It is objected that the deed from Everts to the Bomars was an escrow from 1854 to 1856, and therefore there was no connective and continuous holding under deed or deeds duly recorded. The conveyance was made and recorded and placed with an attorney to be delivered when the Bomars paid the balance of the purchase money, which became due in 1856. This purchase money was paid when it became due in 1856, and the deed was delivered. During the interim the Bomars were in the actual possession of the land, cultivating, using and enjoying the same, paying the taxes, and claiming the same openly, notoriously and adversely to appellants and all the world.

Undoubtedly, when the money was paid and the deed was fully delivered, that delivery related back to the date when the Bomars purchased and went into possession.

It is also urged that the court erred in admitting as evidence a certified copy of the Sherrod Dunman certificate with the transfer by W. H. Pulliam to Larkin of one-third interest in the same indorsed or written on the original certificate. This certified copy was from

the general land office, and it appeared from the certificate of the commissioner that the original certificate with the transfer written thereon was on file in that office. The objection was to the transfer, upon the ground that the patent had not issued to the assignee, and therefore the transfer was not an archive in the land office. Under the statutes in force prior to the act entitled "An act to better protect the papers, records and files in the general land office," approved June 2, 1873, the doctrine contended for by appellants was well established. But it is provided by the fourth section of that act that "No transfer or deed that may be a link in any chain of title to any certificate on file in the general land office shall be withdrawn by any one; but the commissioner shall, on demand, deliver to the interested party certified copies, which shall have the same force and effect as the originals." It has been held by recent decisions that the effect of that provision was to make all transfers to certificates on file in the general land office, and coming within its terms, archives.

Here the transfer was nearly forty years old at the time of the trial. If the original had been produced from the proper source it would have been admissible as an ancient document. It appears, from the certificate of the commissioner that the original was in the proper custody; hence by the express terms of the statute the certified copy had the same force and effect as would have been accorded to the original had it been produced. This certificate was located on the land in 1841, and but a short time after the transfer had been written on it, and it will be presumed that it had remained on file in the general land office since that date, as the evidence of the right of Larkin and those claiming under him.

Objections were urged to the admissibility of a transcript from the district court of Red River county, in a suit by Pulliam against Duncan for specific performance of a bond, to make the latter a title to one-third of the Sherrod Dunman certificate. It is claimed that the petition shows that it was filed in the county court, then called a court of quarter sessions, and that the judgment was rendered in the district court; and that there is no order of transfer shown to have been made. It appears, however, that the petition was filed in the district court March 29, 1839, and that the decree was rendered by that court October 6, 1840.

By the act of January 26, 1839, the civil jurisdiction of the county courts was greatly reduced, and all process theretofore issued out of that court, in cases involving one hundred dollars and upwards, was required to be returned to the district court. Hart. Dig., art. 267.

Doubtless under that legislation the petition was filed in the district court, and no order of transfer seems to have been contemplated.

After the parties had announced ready upon the merits, and had gone into the trial, the court, over the objection of the appellants, permitted the appellees to amend their pleadings. The statute provides that pleadings may be amended before the parties announce themselves ready for trial, " and not thereafter." R. S., art. 1192.

In Whitehead v. Foley, 28 Tex., 10, it was held that a general rule is prescribed by that statute, to the effect that, after announcement, the parties are not entitled, as a matter of right, to amend their pleadings, but that it is in the power of the court to allow such amendments after that time as might become necessary to attain the ends of justice.

Appellants claim that the court erred in admitting as evidence certain recitals in the petition filed in the cause of Pulliam v. Duncan, and also recitals in the bond for title which was the basis of that suit. It seems that these recitals were admitted upon the theory that they tended to show that McFarland consented in writing to the sale of the one-third interest in the certificate to Duncan. It does not appear to us that such recitals were admissible for that purpose. But from an examination of the record it appears that the error was immaterial, and that no injury resulted to appellants therefrom.

The sale of a land certificate or the right thereto has never been required to be evidenced by a written transfer. A verbal sale is sufficient. Randon v. Barton, 4 Tex., 292; Cox v. Bray, 28 Tex., 247; Johnson v. Newman, 43 Tex., 640; Stone v. Brown, 54 Tex., 334.

In 1838 Mrs. McFarland could sell and dispose of her interest in, or right to, the certificate with the assent of her husband, and it was not necessary that such assent should be in writing. And after so great a lapse of time, and no adverse right having been asserted by him or his heirs, his assent and acquiescence will be presumed, and especially so where, as in this case, he was aware of the sale. Harvey v. Hill, 7 Tex., 591; Poor v. Boyce, 12 Tex., 448.

It appears from the finding of the jury, in response to special issue No. 23, that Nancy McFarland and her husband, William McFarland, sold a third interest in the certificate to Duncan in 1837 or 1838, and that Amy Dunman assented to and ratified the sale. This finding is sustained by the evidence of Janes and others, and there was no conflict of evidence upon that issue. So that the other issue propounded, as to McFarland's assent to the sale to Duncan, was

immaterial, and any error respecting that issue could not have affected the result.

The jury also found that Sherrod Dunman had no child or children living at the time of his death, but that Riley Dunman died before his father. While there is a conflict of evidence upon that point, the finding of the jury, being sustained by the evidence, is conclusive. Therefore, the appellants could not successfully assert any claim or right to the land as heirs of Riley Dunman. And as Mrs. Amy Dunman had agreed to the partition between her and Mrs. McFarland, and had assented to and acquiesced in the sale of the one-third interest in the certificate by the latter to Duncan, she thereafter had no such right to or interest in that part of the certificate as would descend to her children at the time she died. Those who had acquired that interest had the right to locate the certificate to that extent. Farris v. Gilbert, 50 Tex., 356.

From the issuance of the certificate March 27, 1838, until the institution of the suit of George Lary v. C. C. Binkley, the appellees and those under whom they claim have openly asserted their right to that interest in the certificate, and the land located by virtue of it. And during that long period of thirty-seven years no effort was made by the appellants to repel that hostile assertion of right. If they ever had any interest in that part of the certificate, which they did not, still they have slept too long upon their rights, and would not at this late day be heard to assert them. League v. Rogan, Tex. Law Review, vol. 1, p. 226.

Every fact necessary to the complete bar of five years' limitation appears from the finding of the jury. When Martha Lary married her disability of minor age was removed, and that of coverture could not be tacked so as to save the running of the statute.

It also appears that there was a mistake in the consent decree. In that decree it is recited that Spencer is to have his land, but, in the description following, the error is made of dividing the land east and west instead of north and south, and it is not contended by any one except Taylor, but what he had the right to have that mistake corrected. As to Taylor, who claims to have been an innocent purchaser for value and without notice, the jury found that he was not a purchaser in good faith and for a valuable consideration. This finding is not, as claimed, without support. There is evidence of notice; and besides, Spencer's deed from Bomar containing a correct description of the land was on record in the county long before Taylor's purchase.

Every fact necessary to the establishment of Spencer's right to

the land claimed by him is affirmed by the jury in response to special issues submitted, and the errors complained about are entirely immaterial and could in no event change the result.

Our conclusion is, therefore, that the judgment as to appellee Bomar ought to be reversed, and that the supreme court ought to render such judgment as to him as ought to have been rendered by the court below. That is, the appellant's exceptions be sustained to the cross-bill of said Bomar, and that he recover nothing by reason thereof, and that he pay the cost occasioned by the same; and as to appellee Spencer, that the judgment as rendered in the court below be in all things affirmed.

Above report of commissioners of appeals examined, their opinion adopted and the judgment affirmed as to Spencer; but in view of the fact that the appellee Bomar, upon exceptions being sustained to his cross-bill, is entitled to amend the same if he so chooses, the cause will be reversed as to him, and remanded, in order that he may obtain leave to amend should he choose to apply for such leave; otherwise that said cross-bill be dismissed and the said Bomar recover nothing by reason thereof.     WILLIE, Chief Justice.

REVERSED AND REMANDED.

[Opinion acted on February 18, 1884.]