BUCKLES *v.* CHICAGO, M. & ST. P. RY. CO.

*(Circuit Court, W. D. Missouri, W. D.*    September 16, 1891.)

NONSUIT—FAILURE TO PAY COSTS—NEW ACTION.
  Where plaintiff took a nonsuit in a state court after the hearing of the evidence and the giving of the instructions, and then, within the year, reinstitutes the same action in the same court, a motion should be entertained on removal to stay further proceedings until plaintiff has satisfied the costs in the first proceeding.

At Law.

This was an action of tort by Mary J. Buckles against the Chicago, Milwaukee & St. Paul Railway Company, instituted originally in the state court, and removed to this court on application of the defendant. Defendant has now filed a motion to stay further proceedings until plaintiff pays the costs assessed against her in the state court.    Motion allowed.

*Wm. M. Burris,* for plaintiff.
*Pratt, Ferry & Hagerman,* for defendant.

PHILIPS, J.    This is a motion to stay proceedings in this cause.    It arises on the following state of the record and proofs:    The plaintiff instituted action on the same cause of complaint—an alleged tort—against this defendant in the circuit court of Clay county, Mo.    Issue was joined, and the case went to trial before a jury.    After all the evidence was heard, and the court gave its instructions to the jury, the plaintiff took a nonsuit.    There was a judgment against the plaintiff for the costs in that case, which have never been paid.    Within the year from said nonsuit the plaintiff reinstituted the same action against the defendant in said circuit court.    On application of the defendant this cause was removed into this court.    On motion of defendant the plaintiff was ruled to give security for costs, which she has failed to give, but has suggested to the court that she would make application to sue as a poor person.    The defendant has filed an intermediary motion to stay further proceedings by the plaintiff herein until she has paid the costs assessed against her in the Clay county circuit court.    In the common-law courts of England the practice indicated by this motion arose out of ejectment proceedings, in which one recovery of judgment was not *res judicata,* but the same action might be renewed.    As a measure of just protection to the party who was thus subjected to repeated litigations over the same cause of action, the courts, in the application of an equitable principle to a common-law proceeding, entertained motions to stay the prosecution of the second action until the plaintiff paid the costs adjudged in the first proceeding.    In other forms and character of actions this rule was not formerly applied as a matter of course.    In certain conditions it might work injustice and hardships; as in the action for *assumpsit* for debt, where the plaintiff might not have any other means out of which to pay the cost than the debt which the defendant wrongfully detained

from him.    Neither was this rule applied to the instance of a party whose body was taken in execution for the costs, as that was considered tantamount to payment for the purpose of the rule.    "But in actions of tort, for a malicious prosecution, or for a trespass, etc., the court will compel the plaintiff to pay the costs of a first action before he is allowed to proceed in a second for the same cause; and in actions for the recov ery of debt, though they will not generally stay the proceedings in a second action until the costs of a former one are paid, yet of late years this has been done in several instances on the ground of vexation, and that, whether the action was in the same or different court." 1 Tidd, Pr. (4th Amer. Ed.) 537, 538.    In New York practice (2 Tiff. & S. 412,) it is said:

"Every court of justice has power to control its proceedings so as to prevent oppression between its suitors, and to this end a court will not permit a defendant to be harassed by a second suit for the same cause until the costs of a former suit have been paid.   The practice of the court to stay proceedings in the second action, where the plaintiff has failed in a former action against the same defendant, for the same cause, until the costs of the former action be paid, originated in the action of ejectment; but it was afterwards extended to other forms of action, and the power is now exercised in all cases, and this form of relief is granted, although the former action was not tried upon the merits, but was discontinued, dismissed, or disposed of by judgment of nonsuit, or where there was a judgment on demurrer. * * * It makes no difference that the former action was pending in another court; the power has been exercised where the former suit was in a court of the United States."

The text is fully supported by the following adjudged cases: *Ripley* v. *Benedict,* 4 Cow. 19; *Perkins* v. *Hinman,* 19 Johns. 237; *Taylor* v. *Vandervoort,* 9 Wend. 449; *Kentish* v. *Tatham,* 6 Hill, 372; *Jackson* v. *Carpenter,* 3 Cow. 22.    In *Ex parte Stone,* Id. 380, the reason and authority of the rule are thus stated:

"The power exercised by the court to stay proceedings till the costs of a former suit for the same cause are paid does not depend exclusively upon the question whether their collection can be enforced by execution.   It is an equitable jurisdiction, and intended to prevent the vexatious multiplication of suits.   Here the plaintiff has voluntarily, and without showing any excuse, forborne to pursue his action upon the *habeas corpus.*   The common pleas were right in staying his action."

This practice is approved by the courts of Pennsylvania.    In *Flemming* v *Insurance Co.,* 4 Pa. St. 475, the court said:

"The practice of the court to stay proceedings in a second suit until the costs of a former action for the same cause are paid is one of the modes adopted to compel the payment of costs due, as well to the officers of the court as to the party; and is convenient and just in all aspects in which it can be viewed. * * * The practice of the courts in this respect is wholesome and beneficial, and often operates as a penalty by which individuals are protected from being harassed by a multiplicity of suits for the same cause of action."

So, also, has the supreme court of Wisconsin approved the practice. *McIntosh* v. *Hoben,* 11 Wis. 400; *Felt* v. *Amidon,* 48 Wis. 66, 72, 73,

3 N. W. Rep. 825. See, also, *Gerrish* v. *Pratt*, 6 Minn. 53, (Gil. 14;) *Henderson* v. *Griffin*, 5 Pet. 151; *Robinson* v. *Transportation Co.*, (R. I.) 14 Atl. Rep. 860.

This rule ought to be invoked at times in this jurisdiction. Under the practice as it obtains under the state Code, where the courts permit a plaintiff to take a nonsuit at any time before the case is passed upon by the jury, it is a common practice after the plaintiff has occupied days and weeks in the trial of his cause, and all his evidence has been delivered, and the court has delivered its opinion sustaining a demurrer to the evidence, for him to take a nonsuit; and it is the common practice, as was done in the case under consideration, after all the evidence has been heard on both sides, and after the court has given its instructions to the jury, for the plaintiff to announce a nonsuit; and immediately after he will bring the same action over in that court, or other court where jurisdiction may be had, and retry the same matter; and, as often as the plaintiff conceives that he discovers some undue bias in the mind of the trial judge, or some unfavorable indication by some juror, or has heard of some supposed influence of the opposite party or his attorney over the court or some member of the jury, or thinks he can on another trial mend his evidence, he will take a nonsuit, and bring over the same cause of action in that or some other court. Where the party does this without having paid the costs adjudged against him for his first experiment with the chances of success, there ought to be a discretionary power lodged in the courts to require the litigant to discharge such costs as a condition precedent to his right to further put the adversary to another trial. While the courts of justice should be open and free to the citizen for the enforcement of rights and redress of grievances, he himself should be held to do justice, and not litigate and relitigate, experiment and re-experiment with the chances of a favorable verdict, without paying to the ministerial officers of the court their just fees, and to the defendant his costs "in that behalf heretofore laid out and expended." Of course, this being in the nature of an equitable discretion, inherent in every court, it should be exercised cautiously, *ex æquo et bono*, employing or declining the power as the right and justice of the particular case may seem to require. With the often extreme conservatism and caution of our trial courts it is a discretion or power which is not so apt to be abused as too sparingly used. In this case my conclusion is that the plaintiff should be required to pay the costs due the officers of the Clay county circuit court, as also the costs of the defendant incurred in the former trial, before she can proceed with the further prosecution of this action.

It is accordingly so ordered.