### KIMBLE v. WESTERN UNION TEL. CO.

(Circuit Court, D. Delaware. December 4, 1895.)

PRACTICE—STAYING ACTION TILL COSTS OF FORMER ACTION PAID.
     Plaintiff commenced an action in a state court to recover damages for injuries alleged to have been caused by defendant's negligence. The cause was removed by the defendant to the United States circuit court, in which, after the court, on the trial, had instructed the jury to render a verdict for the defendant, the plaintiff submitted to a voluntary nonsuit. The plaintiff afterwards commenced another action against defendant, for the same cause, in the United States circuit court in another district. *Held*, that the plaintiff's proceedings in such second action should be stayed until the costs of the first action were paid, although the first action was prosecuted by plaintiff in forma pauperis, under the act of congress of July 20, 1892 (27 Stat. 252).

This was an action by George T. Kimble against the Western Union Telegraph Company to recover damages for personal injuries. Defendant moved for a stay of plaintiff's proceedings.

Anthony Higgins and Albert Constable, for plaintiff.
Levi C. Bird and Andrew E. Sanburn, for defendant.

WALES, District Judge. The plaintiff has sued the defendant to recover damages for personal injuries alleged to have been received by him in consequence of the negligence of the defendant. He had already sued the defendant for the same cause in the circuit court of the Second judicial circuit of the state of Maryland, from which, on motion of the defendant, the case was removed to the United States circuit court for the district of Maryland. At the trial of the cause, after the close of the evidence, the court, on motion of the defendant's attorney, instructed the jury to find a verdict for the defendant; and thereupon, upon the order of the court, the plaintiff, being called, made default, and judgment of non pros. was entered. On these admitted facts, and on motion of defendant's counsel, the plaintiff has been ruled to show cause why he should not be ordered to pay the costs of the first, before prosecuting the present, action.

Formerly, excepting in actions of ejectment, it was not usual to stay the proceedings in a second action until the costs in a prior one for the same cause, and between the same parties, had been paid.

But at a very early period, in actions of tort, for a malicious arrest or prosecution, or for a trespass, the court would make such an order, in the exercise of a sound discretion, in a proper case. Tidd, Prac. (3d Am. Ed.) 438; Weston v. Withers, 2 Term R. 511; Crawley v. Impey, 8 Taunt. 407; Henderson v. Griffin, 5 Pet. 158. In more recent times the practice has been recognized, and it is now the general rule to compel the plaintiff to pay the costs of the first action before prosecuting a second one for the same cause, against the same defendant, in the same court, or in another court of concurrent jurisdiction. The application of the rule is governed only by a just regard to the rights of the parties, and to the circumstances under which it is applied for. Henderson v. Griffin, supra. The rule of practice as thus stated is not disputed by plaintiff's counsel; but it is claimed that the plaintiff is exempt from its operation, inasmuch as he sued in forma pauperis in the first action, under the provisions of the act of congress of July 20, 1892 (27 Stat. 252).

"Section 1. That any citizen of the United States, entitled to commence any suit or action in any court of the United States, may commence and prosecute to conclusion any such suit or action without being required to prepay fees or costs, or give security therefor before or after bringing suit or action, upon filing in said court a statement under oath, in writing, that, because of his poverty, he is unable to pay the costs of said suit or action which he is about to commence, or to give security for the same, and that he believes he is entitled to the redress he seeks by such suit or action, and setting forth briefly the nature of his alleged cause of action.

"Sec. 2. That after any such suit or action shall have been brought, or that is now pending, the plaintiff may answer and avoid a demand for fees or security of costs by filing a like affidavit, and wilful false swearing in any affidavit provided for in this or the previous section, shall be punishable as perjury as in other cases.

"Sec. 3. That the officers of the court shall issue, serve all process, and perform all duties in such cases, and witnesses shall attend as in other cases, and the plaintiff shall have the same remedies as are provided by law in other cases.

"Sec. 4. That the court may request any attorney of the court to represent such poor person, if it deems the cause worthy of a trial, and may dismiss any such cause so brought under this act if it be made to appear that the allegation of poverty is untrue, or if said court be satisfied that the alleged cause of action is frivolous or malicious.

"Sec. 5. That judgment may be rendered for costs at the conclusion of the suit as in other cases: provided, that the United States shall not be liable for any of the costs thus incurred."

By the first section of this act, it will be observed that the plaintiff is not "required to prepay fees or costs, or to give security therefor," on filing a sworn statement that, because of his poverty, he is unable to do either. Section 5 provides that judgment may be rendered for costs as in other cases. It is urged in opposition to the pending motion that to grant it would be to virtually nullify the act of July 20, 1892. We do not concur in this. It does not follow that, because the plaintiff was not required to prepay or give security for the costs of the first action, he may not be compelled to pay the judgment for costs therein before prosecuting a second one. The statute does not extend that far. He has already had his day in court, taken the benefit of the statute, and voluntarily abandoned his suit, without assigning any satisfactory reason, then or since, for doing so. He

availed himself of the privilege of using the processes of the court and the services of its officers in the effort to establish his claim, without complying with the conditions imposed on the general suitor, and the statute cannot be construed in such manner as to confer upon him any additional favor. He is entitled to no other exemption than those expressly given by the act, and he now stands in the same position as any other person who brings a second action for the same cause. To adopt the construction contended for would have the effect of converting the statute into the means of indefinitely harassing the defendant. Such, clearly, is not the purpose of this beneficial act. It was designed to help an honest poor suitor in establishing his just claims in a court of justice, not to put into his hands a weapon of offense. It not seldom happens, when a plaintiff, at the close of the evidence, foresees an adverse verdict, he will take a nonsuit, with the hope of procuring more proof in another trial before another jury, and in another court. This course leads to a multiplicity of suits, subjects a defendant who has a just and legal defense to needless trouble and expense, and should not be encouraged. If the plaintiff should now be allowed to proceed with the action which he has brought in this court, and claim immunity from the payment of costs of the first action, when and where would his experiments stop? His cause may be a righteous one. Its merits have not been discussed here, and can have no effect in the disposal of the motion. Let the rule be made absolute.