MRS. GILMER PEEK ET AL V. G. S. BERRY ET AL.

No. A-265. Decided December 6, 1944.
Rehearing overruled January 17, 1945.
(184 S. W., 2d Series, 272.)

*Mayo W. Neyland,* of Greenville, and *Edwin M. Fulton,* of Gilmer, for petitioners.

The Court of Civil Appeals erred in holding that the petitioner's cause of action was barred by the two year statute of limitation, and that the dismissal of the former suit (which was because plaintiff failed therein to comply with the rule for costs) was res adjudicata. Hand v. Arrington, 248 S. W. 25; 10 Tex. Jur. 794; Burkburnett Refining Co. v. Ilseng, 116 Texas 366, 292 S. W. 179; Arn v. Bradshaw Oil and Gas Co. 93 Fed. (2d) 728; Snelson v. Drane, 134 S. W. (2d) 445.

*Rollins, Clark & McWhirter,* and *A. S. Rollins,* of Greenville, for respondents.

On the proposition that plaintiff's suit is barred by the two year statute of limitation: Quinn v. Press, 135 Texas 60, 140 S. W. (2d) 438; Gordon v. Rhodes, 102 Texas 300, 116 S. W. 40; Shaw v. Bush, 61 S. W. (2d) 526.

The judgment of the trial court became final and binding upon the dismissal of the suit and same is res adjudicata of the present suit, the petition in which is an exact copy of the fifth amended original petition in the former suit. Wade v. Peters, 89 Or. 233, 173 Pac. 567, 13 A. L. R. 1100; Parker v. Spencer, 61 Texas 155; Robicheaux v. Gulf Prod. Co., 128 Texas 441, 99 S. W. (2d) 880.

MR. JUDGE FOLLEY, of the Commission of Appeals, delivered the opinion for the Court. ·

This suit was filed by petitioners, Mrs. Gilmer Peek and her son, Houston Peek, individually and as stockholders of Berry's Inc., against respondents, G. S. Berry and wife, Ethel Berry, and Berry's Inc., to establish and impress a trust against the property of the corporation, both real and personal, for recovery for money and goods alleged to have been misappropriated by Berry and wife as stockholders of the corporation, for an accounting, a receiver, an injunction, a lien on the property of the corporation, and for dissolution of the corporation and liquidation and distribution of its assets. By motion to dismiss and special exceptions respondents interposed certain defenses, hereinafter set out, by reason of a judgment of dismissal in a former cause of action of like character between the same parties. The trial court granted the motion of respondents and also dismissed the present suit with prejudice against petitioners filing any other based upon the same cause of action. The Court of Civil Appeals affirmed the judgment of the trial court. 181 S. W. (2d) 116.

From the pleadings of petitioners it appears that G. S. Berry and wife for several years prior to 1939 had operated a general merchandist business in the City of Greenville in Hunt County. They had in their employ Gilmer Peek, husband and father respectively of petitioners, who was general manager· and bookkeeper for the store. For his services he received a salary and 20 per cent of the profits of the business. In January 1939 respondents and Peek agreed to change their former arrangement whereby the business would be incorporated and Peek would purchase a 1/4th interest in it and respondents would retain the other 3/4th. It was determined that an undivided 1/4th interest in the assets of the business would amount to approximately $8,600. It was agreed that the assets of the old business would be transferred to the corporation and that 1/4th of the stock of the corporation would be issued to Peek, 3/8th thereof to G. S. Berry, and ·3/8th to his wife. Peek was unable to pay cash for the value of his interest, but it was agreed that he should pay therefor out of his share of the profits of the corporation. The parties stipulated against his personal liability for the $8,600. Accordingly, in February 1939 the business was duly chartered as Berry's Inc., with a capital stock of $24,000 divided into 24 shares of $1,000 each. Six of these shares were issued to Peek and nine each to G. S. Berry and Mrs. Berry. Berry became president of the corporation, Mrs. Berry

became vice-president, and Peek secretary-treasurer. Berry's salary was fixed at $200.00 per month and Peek's at $150.00 per month. Thereafter, on July 31, 1939, Gilmer Peek died intestate, leaving surviving him his wife and son. In February 1940 the corporation was dissolved by the Secretary of State on the application of Berry and wife who certified they were the sole owners of the stock of the corporation.

On May 16, 1940, petitioners filed Cause No. 19861 in the 62nd District Court of Hunt County against respondents alleging substantially the same facts as above stated, and further, that they were the owners of a 1/4th interest in the assets of the corporation; that immediately upon entering business as a corporation respondents conspired together to destroy the value of the stock owned by Gilmer Peek; that respondents had been guilty of many fraudulent acts, converting the assets of the corporation to their own use; that they had excluded petitioners from any participation in the business and denied that petitioners owned any interest therein; that the dissolution of the corporation was fraudulent; that by virtue thereof respondents became trustees of the corporation to hold its property for the benefit of the creditors and stockholders; and that respondents were disposing of the property of the corporation and appropriating the proceeds to their own use, which, if permitted to continue, would result in the total destruction of petitioners' stock to their damage in the sum of $10,000. Petitioners asked for the appointment of a receiver and for judgment for their damages.

The petitioners filed five amended original petitions in Cause No. 19861, each time setting up substantially the same cause of action. The fifth was filed June 23, 1941. Immediately prior thereto they had filed an affidavit of their inability to pay the costs of court or give security therefor. This affidavit was contested by the district clerk and by respondents. The costs accrued in the cause were unusually high, which was due to the appointment of an auditor to examine and state the accounts between the parties in conformity with Rule 172 T. R. C. P. The charge for the audit was $750, which account was allowed as costs by order of court dated January 20, 1941. Of this amount petitioners had paid $300, the remainder of such account, and other costs relatively small, being unpaid then and now.

On December 11, 1941, after a hearing on the ability of petitioners to pay or secure the unpaid costs, the court sustained the contest and ordered petitioners to give security for costs at that term of court, otherwise the case should be dismissed.

On December 16, 1941, the court sustained ten special exceptions to petitioners fifth amended original petition. On January 12, 1942, petitioners filed a cost bond but the same was not approved by the clerk. On June 27, 1942, at a succeeding term of the court, petitioners filed a second affidavit of their inability to pay the costs or give security therefor, to which respondents filed a plea of res adjudicata and asked that the affidavit be stricken. On June 29, 1942, the affidavit was stricken and the court ordered the cause dismissed by reason of petitioners' failure to comply with the former rule for costs. On July 24, 1942, the court over-rules the motion of petitioners to reinstate the cause, to which action petitioners excepted and gave notice of appeal, but no appeal was ever perfected.

On December 21, 1942, the instant suit was filed as Cause No. 20659 in the 62nd District Court of Hunt County. The petition was substantially identical with the fifth amended petition in Cause No. 19861. In their answer and motion to dismiss, respondents alleged that the judgment of dismissal in Cause 19861 is res adjudicata to this suit, asserted that the cause of action is barred by the two-year statute of limitation, and that the same should be dismissed for the further reason that the costs adjudged against petitioners in the first suit had not been paid. Cause 20659 was transferred to the 8th District Court of Hunt County, such court and the 62nd District Court having concurrent jurisdiction with each other in that county. Thereafter, the cause was dismissed with prejudice in the 8th District Court, and the Court of Civil Appeals, in affirming the judgment, sustained the three defenses above mentioned. In each of these holdings we think the Court of Civil Appeals was in error.

■ We are of the opinion the doctrine of res adjudicata has no application in this case. A judgment of dismissal for failure to comply with the rule for costs is not ground for the plea of res adjudicata to a similar suit thereafter filed, since the dismissal on this ground does not adjudicate the rights of the parties. Qualls v. Fowler, 186 S. W. 256, writ refused. Neither is the doctrine applicable ordinarily by reason of the mere sustaining of general or special exceptions to a petition. Kuehn v. Keuhn, 242 S. W. 719; Scherff v. Missouri Pac. Ry. Co., 81 Texas 471, 17 S. W. 39. A ruling sustaining a demurrer or exception is merely an interlocutory order and decides nothing but the sufficiency of the pleadings. Hill v. Nolan, 147 S. W. 365.

■ Where the trial court sustains exceptions which leaves no cause of action pending, and the plaintiff refuses to amend, a

final judgment of dismissal for this reason is res adjudicata of another suit upon the same cause of action. Jones v. City of Uvalde, 144 S. W. (2d) 932, writ refused; Robicheaux v. Gulf Production Co., 99 S. W. (2d) 880. Such a judgment goes to the merits of the petition and is binding on the parties until reversed, vacated or set aside. Parker v. Spencer, 61 Texas 155. As was expressed by Judge Gaines in Scherff v. Missouri Pac. Ry. Co., supra, when a general demurrer to a petition is sustained, and the plaintiff declines to amend, "he practically confesses that he has alleged in his pleading every fact he is prepared to prove in support of his action," and therefore, "in such case, nothing remains to be done except to render a judgment for the defendant." But we have no such case before us. Cause No. 19861 was not dismissed because of the refusal or failure of petitioners to amend their fifth amended petition but because of their failure to give security for costs as directed by the court. We also do not agree with the Court of Civil Appeals that the sustaining of the exceptions to the fifth amended petition in the former suit left no allegations in the pleadings sufficient to state a cause of action. The trial court overruled the general demurrer to the petition but sustained ten special exceptions which were addressed to mere conclusions and generalities of the pleaders, such as, that "the said G. S. Berry did take from the corporate treasury as will be more fully shown hereafter, large sums of money and large portions of the stock"; or, that "the said G. S. Berry did collect bills receivable owing to said corporation from divers and different persons"; or that "the said G. S. Berry did from time to time take of the goods, wares and merchandise belonging to said corporation and sell the same and appropriate the proceeds to his own use and benefit." Following these general allegations and others like them, all of which were excluded, petitioners made numerous specific allegations of misappropriations and fraudulent acts on the part of respondents. These specific allegations were not stricken from the pleadings, and they, and other facts asserted, were sufficient in our judgment to state a cause of action.

On the question of limitation it must be recognized that this suit is an action primarily to declare and establish a trust, and, when the same has been established, for recovery of the title to the trust property, both real and personal, and for damages for the conversion of the trust property. Actions such as this are not governed by the two-year statute of limitation, and the Court of Civil Appeals erred in so holding. The period of limitation applicable to suits to enforce a trust, or arising out of a breach of trust, is ordinarily governed either by the four-year statute

of limitation prescribed for actions "other than for the recovery of real estate, for which no limitation is otherwise prescribed," or, if the suit may be regarded as one for the recovery of land, by the general statutes of limitation applicable to suits for the recovery of real estate. Hand v. Errington, 248 S. W. 25; Home Inv. Co. v. Strange, 109 Texas 342, 195 S. W. 849; McCord v. Nabours, 101 Texas 494, 109 S. W. 913; Smith v. Ideal Laundry Co., 286 S. W. 285. The petition in the present suit having been filed on December 21, 1942, it will be seen from the above facts that the same was filed within the limitation periods applicable to this cause of action.

■ We are further of the opinion the trial court was not authorized to dismiss this suit, at the time and in the manner indicated, because of the failure of petitioners to pay the costs in the former action. The question of the enforcement of payment of costs of a prior action seems never to have been adjudicated in this jurisdiction, but the courts in numerous other states have announced certain rules for such process which are almost universally accepted. The procedure in such cases, however, is by a stay of the proceedings in the second suit rather than by its arbitrary dismissal. The practice of enforcing the payment of costs of a former action between the same parties originated in ejectment suits, but the scope of the rule has been enlarged to include most all classes of actions. Buckles v. Chicago, M. & St. P. Ry. Co., 47 Fed. 424. In exercising the power of the courts have in view the twofold purpose of enforcing the payment of costs and preventing vexatious litigation. Golden v. New York, New Haven & Hartford Ry. Co., 222 Fed. 348.

Except in a limited number of jurisdictions it is held that a court may stay proceedings in a second action, whether legal or equitable, between the same parties for the same cause of action, until the costs of the first action are paid or secured. 15 C. J. 302, Sec. 744; 20 C. J. S. 666, Sec. 426. While a court may in a proper case fix a reasonable time within which costs of a former action should be paid, and may dismiss the second action for noncompliance with the order, the failure to pay the costs of a former suit furnishes no ground for the arbitrary dismissal of a subsequent suit on the same cause of action, but at most is merely ground for staying the progress of the second suit until the costs of the first are paid. Wilson v. Sullivan, 112 S. W. 1120; Summers v. Southern Ry. Co., 173 N. C. 398, 92 S. E. 160; Sampson v. Morrison, 259 Ky. 555, 82 S. W. (2d) 808; Safran v. Smith, 120 N. J. L. 108, 198 A. 396; Wait v. Westfall, 68 N. E. 271; Davenport, R. I. & N. W. Ry. Co. v. De Yaeger, 112 Ill. A. 537; 20 C. J. S. 659, Sec. 421.

■ It is also generally held that for the purposes of the application to stay the proceedings the second action will be deemed vexatious until the inference is removed by some showing on the part of the plaintiff, but the slightest countervailing evidence is sufficient to overcome the presumption. Cooper v. Cooper, 12 N. E. (2d) 244; Lake Agricultural Co. v. Brown, 186 Ind. 30, 114 N. E. 755; Hipes v. Griner, 28 Ind. App. 160, 62 N. E. 500.

■ The weight of the authority also is that the mere pecuniary inability of the plaintiff to pay the costs of the first suit is not ground for a refusal to say the subsequent suit by plaintiff on the same cause of action. Kimble v. Western Union Tel. Co., 70 Fed. 888, 890; Buckles v. Chicago, M. & St. P. Ry., 53 Fed. 566; Lincoln v. New York Cent. & H. R. R. Co., 121 N. Y. S. 1. This rule is applicable in all cases unless there are special facts and circumstances presented which show that it would be unjust and inequitable to apply it. Schwartz v. Minsker Realty Co., 152 N. Y. S. 70. The reason for this principle is aptly expressed in Kimble v. Western Union Tel. Co., supra, where the plaintiff sought exemption from the operation of the rule because he sued in forma pauperis. The court said:

"He is entitled to no other exemption than those expressly given by the act, and he now stands in the same position as any other person who brings a second action for the same cause. To adopt the construction contended for would have the effect of converting the statute into the means of indefinitely harassing the defendant. Such, clearly, is not the purpose of this beneficial act. It was designed to help an honest poor suitor in establishing his just claims in a court of justice, not to put into his hands a weapon of offense. It not seldom happens, when a plaintiff, at the close of the evidence, foresees an adverse verdict, he will take a nonsuit, with the hope of procuring more proof in another trial before another jury, and in another court. This course leads to a multiplicity of suits, subjects a defendant who has a just and legal defense to needless trouble and expense, and should not be encouraged. If the plaintiff should now be allowed to proceed with the action which he has brought in this court, and claim immunity from the payment of costs of the first action, when and where would his experiments stop?"

In view of another trial we approve the above principles of law governing the enforced collection of costs in former suits between the same parties upon the same cause of action. However, we think these principles should not be summarily applied by a dismissal of the suit, as was done in this case, but that a

stay of the proceedings should be ordered for a reasonable time within which petitioners might pay the costs or make some showing of special facts and circumstances making it unjust or inequitable to compel them to do so.

The judgments of both courts below are reversed and the cause remanded to the trial court for further proceedings not inconsistent with this opinion.

Opinion adopted by the Supreme Court December 6, 1944.

Rehearing overruled January 17, 1945.