MATAGORDA CANAL CO. v. STYLES.
(No. 7166.)

(Court of Civil Appeals of Texas. Galveston. Dec. 19, 1918.)

1. MANDAMUS ⬥31 — COMPELLING PROCEEDING WITH CASE.

By Vernon's Sayles' Ann. Civ. St. 1914, art. 1595, Court of Civil Appeals cannot issue writ of mandamus to compel district court to proceed with trial of cause pursuant to law, unless its action in continuing cause amounts to a refusal so to proceed.

2. CONTINUANCE ⬥36—ON COURT'S OWN MOTION—DISCRETION.

Discretion of trial judge in method of control and disposition of docket of his court is large, and, unless continuance of cause on his own motion is so unreasonable as to be clear abuse of discretion, continuance cannot be regarded as refusal to proceed with trial pursuant to law.

3. CONTINUANCE ⬥36—ON COURT'S OWN MOTION—DISCRETION.

Action of trial judge in continuing on his own motion cause involving water rights, until board of water engineers, in pending proceeding, had determined rights of parties, held not an abuse of discretion justifying holding that by order of continuance he refused to proceed with trial pursuant to law.

Application for writ of mandamus by the Matagorda Canal Company against Samuel J. Styles. Application denied.

C. R. Wharton, of Houston, for applicant. Gaines & Corbett, of Bay City, and Wm. H. Wilson, of Houston, for respondent.

PLEASANTS, C. J. This is an application to this court for a writ of mandamus to compel the respondent, who is judge of the district court of Brazoria county, to proceed to trial and judgment in a suit in said district court brought by the relator against the Markham Irrigation Company, filed in No-

vember, 1917. The nature of the suit and the facts upon which relator asks for a writ of mandamus are stated in the application as follows:

"(a) The Matagorda Canal Company averred: That it was the owner of water rights by statutory appropriation which authorized it to take water from the Colorado river for the purpose of irrigating 4,000 acres of land. That its pumping plant was situated on a tributary of the Colorado river on the east side thereof, and its canals extended to lands east of the river. That its right to use the waters of the Colorado river for irrigation was based upon a statutory filing made in December, 1900.

"(b) That the defendant Markham Irrigation Company was a junior appropriator, and that it, and other defendants named, had constructed an irrigation system on the west side of the river, and above the plaintiff, with canals, intakes, and pumping plants, and that it had so constructed its canals and intakes as to enable it to divert the entire flow of the Colorado river in seasons of dry weather. That it had stopped up natural water courses and drains by which the water would return to the Colorado river from certain lakes and ponds and sloughs on the west side of the river. That through this system of intakes, connections, and canals, the defendants were controlling the entire flow of the river and diverting it through their canals to the irrigation of lands west of the river, so that the plaintiff was unable to procure a suffi-cient volume of water to enable it to carry on its business as an irrigation system.

"(c) That because of this wrongful diversion the plaintiff had suffered damages in the sum of $26,000 during the years of 1915, 1916, and 1917. That at the time of the filing of this suit the plaintiff was unable to make arrangements with tenants for furnishing water for the rice crop during the year 1918, since the control of the river by the defendants rendered it impossible for the plaintiff to furnish water to its tenants during the continuation of the conditions complained of.

"(d) That the plaintiff's plant and canal system, together with its water rights, was worth approximately $75,000. That it would be compelled to allow its plant to remain idle as long as the defendants were permitted to continue controlling and diverting the flow of the river as aforesaid. That its only source of revenue was from the sale of water to tenants on its canal. That the wrongful acts of the defendants would not only deprive the plaintiff of revenue, but would cause its property to waste and deteriorate and become worthless; and, in addition to the specific damages sought for prior years, the plaintiff prayed for damages to the extent of the value of its plant, $75,000, or for injunction, and such other relief as would prevent the defendants from continuing their wrongful appropriation and diversion of the waters of the river."

The defendants answered, filing pleas in abatement and urging that the suit should be referred to the board of water engineers for determination, under the provisions of the irrigation statute passed by the Thirty-Fifth Legislature in 1917.

At the December term of court, the case was called, and the plaintiff announced ready for trial. The defendants, however, procured a continuance on account of the absence of one of their counsel.

The case was again called for trial at the June term of the district court of Matagorda county, and on July 1st the plaintiff announced ready for trial, and the defendant Markham Irrigation Company presented certain pleas in abatement which were heard by the court; and thereupon the court rendered the following order:

"On this day coming on to be considered the pleas in abatement, motions, and exceptions filed by the Markham Irrigation Company, and the other defendants, and evidence having been offered on the pleas in abatement of the pendency of the same controversy before the board of water engineers of the state of Texas, and the court having considered the same; it is ordered and considered by the court:

"(1) That the pleas in abatement of the Markham Irrigation Company and of the other defendants, of the pendency of the proceeding before the board of water engineers, would be overruled; the court finding that this is not an action of the character defined by the statute, to which the board of water engineers is given exclusive jurisdiction, or over which, under the circumstances of this cause, said board has exclusive jurisdiction, and this court finds that the pendency of the proceeding shown to be pending before the board of water engineers is not sufficient to oust this court of jurisdiction, nor does the pendency of this proceeding before the board of water engineers constitute any ground for the abatement of plaintiff's suit; to which the said defendants except.

"(2) That the motion of the defendant Markham Irrigation Company, and the other defendants, to transfer this controversy, as to the water rights, to the said board of engineers, would be overruled, to which said defendants except.

"(3) That the other pleas in abatement and the exceptions filed by the defendants would not be passed upon by the court at this time, but would be continued by the court without prejudice.

"(4) That it appearing from an examination of the plaintiff's and intervener's petitions, and the answers of the defendants, that the injunction and damages claimed in said petitions would depend upon the ascertainment and determination of the water rights of the respective parties to this suit, and it appearing to the court that an adjudication and determination of these waters is now pending before the board of water engineers of the state of Texas, and that all parties to this suit were parties to and participating in said proceeding before the board of water engineers of the state of Texas, therefore this court, on its own motion, will continue this case until said board of water engineers has decided and determined the water rights of the parties to this suit in the proceeding now pending before that board; and said judgment has become final; that this is done by this court as a matter of expediency and in order to have the benefit of the decision of said board of water engineers on that question, and also in order to have the benefit of the evidence tak-

en in that proceeding, and in order to make a more intelligent and accurate decision of the water rights involved in this suit; that this court would not at this time determine whether the ruling of said board of water engineers of the state of Texas would be conclusive or not, the court retaining that question for consideration and determination later.

"To which rulings of the court the plaintiff and intervener then and there excepted, urging as their grounds of exception the following, to wit:

"I. That this suit was instituted in the district court of Matagorda county in November, 1917, for the purpose of recovering the damages that have heretofore been sustained by the plaintiff, Matagorda Canal Company, on account of the diversion of water and other wrongs, injuries, and trespasses fully set out in the plaintiff's first amended original petition filed herein on January 21, 1918. The suit was instituted with the hope that it could be tried and relief granted at the December term of this court and before the rice crop for the year 1918 would be planted, and counsel for the plaintiff appeared in this court on the 21st day of January, 1918, and announced ready for trial and urged upon the court the importance of having a trial and disposition of the controversy at that time. The defendants moved to continue the case upon the ground that one of their counsel was unable to attend court, and the court granted a continuance upon this ground.

"II. At that time the plaintiff urged upon the court that the controversies involved in this suit were continually recurring from year to year; that the Matagorda Canal Company was the oldest appropriator of water from the Colorado river in Matagorda county; that, notwithstanding this fact, a condition of affairs had been brought about which rendered it impossible for the plaintiff to plant its crop for the year 1918; that it had no assurance that it would get water to furnish the tenants along its canal on account of the conditions then maintained by the defendants on the west side of the river, and fully explained in the plaintiff's pleadings; that, if the plaintiff went forward and contracted with the tenants and a crop was planted, it would probably become necessary at the height of the crop season to apply for injunction and other restraining orders to prevent the defendants from diverting water which it would be absolutely necessary for the plaintiffs to have in order to furnish their tenants water to mature any rice crop that might be planted along and upon the canal. Notwithstanding these representations to the court showing the great importance of trying this case in January, 1918, it was continued because of the illness of one of defendant's counsel.

"III. The Matagorda Canal Company has not planted any crop during the year 1918, nor has it contracted with tenants contiguous to its canal to furnish water. Because of the conditions prevailing and fully described in plaintiff's amended original petition, it cannot with safety agree and promise to furnish water through its canal for the very good reason that at a dry season, or at a time when there is a scarcity of water, all the water in the river can and will be diverted to the west side of the river by the defendants, and the plaintiff, though enjoying as a matter of law superior water rights, will be left without water and unable to fulfill any contracts that it might make with its tenants and water users. That it very frequently happens that the dry season of the year is that season just before the maturing of the rice in June, July, and August, and it becomes absolutely imperative to have a supply of water at this critical time in order to mature and save the rice crop. Neither the plaintiff company nor water users along its canal could afford to take the great hazard necessary, including the expense and labor that will be incurred, in planting the rice crop and bringing it to that stage when it would have to have water immediately or be destroyed, under the uncertain conditions prevailing and with the absolute knowledge that if there was a scarcity of water the defendants would divert and use the entire flow of the river for their purposes. Therefore the plaintiff's canal and pumping plant have remained idle during the year 1918, and will continue to remain idle until this controversy is determined and the defendants have been restrained from diverting and using the water in the river as averred in plaintiff's petition.

"IV. That the enforced disuse of the plaintiff's pumping plant and canal system works irreparable injury, in this:

"Its pumping plant consists of valuable machinery which will rust and deteriorate during continued and forced idleness. That any plant equipped with complicated machinery of the character used in a pumping system will deteriorate rapidly from disuse. That its canal will deteriorate more rapidly if not used. That it has had valuable tenants upon its canal system who will seek other employment and not make contracts with it again, and they will be permanently driven away from its canal by the continued and forced disuse of the canal system.

"V. That the alleged controversy between the board of water engineers is of no importance in determining the questions involved in this suit. That it is indefinite and uncertain when the board of water engineers will pass on the matters before it. That after long delays they may make a finding under the statute, but this finding will not be binding upon this court, nor conclusive of any of the issues involved in this litigation, and that, if an appeal should be made from the finding of the board of water engineers passing upon any controversies between the parties to this litigation, such appeal would be brought to this court and could not be consolidated with the present case. That this case, under the court's order, will remain on the docket until a final judgment has been entered in the hearing before the board of water engineers, and in any appeal that may be taken from the findings of that board. That, in the ordinary course of litigation of this character, a hearing before the board of water engineers and final judgment by that board would not likely be had for several months. That an appeal to the district court by either party from a finding by the board might not be heard for a year thereafterwards. That a further appeal from this court to the Court of Appeals and the Supreme Court might delay a final judgment, and the proceedings now pending before the board of water engineers, for a period of from anywhere from five to seven years, during which time the present case remains on the docket, and the plaintiff's prayer for damages

already sustained remains untried, its property deteriorates, its canals fill up, its tenants and water users scatter. These things would amount to a practical destruction of the plaintiff's properties; although it is the first water user in Matagorda county, the defendants will be permitted to maintain a status unlawfully taken, from which it appears from their pleadings they are raising crops worth from $500,000 to $1,000,000 this year.

"VI. That the plaintiff has a perfect right to have a speedy determination of this case upon the issues tendered by its pleadings, agreeable to the principles and usages of law. That it works grave injustice and irreparable injury to delay it pending a final judgment in the hearing of the matters before the board of water engineers.

"Wherefore, plaintiff excepts to the action of the court in entering the above order, and here now tenders its bill of exceptions for approval.

"Sixty days after adjournment being allowed to either party in which to file bills of exceptions.

"Approved.                    Styles, Judge.

"Wherefore, premises considered, the relator prays that this court grant a writ of mandamus to compel said judge of the district court to proceed to trial and judgment in said cause of Matagorda Canal Company v. Markham Irrigation Company et al., agreeably to the principles and usages of law."

The application is properly verified by the affidavits of the president and the attorney for the relator company.

We are not called upon by this application to construe the irrigation statutes of this state, nor to determine what weight or conclusiveness should be given by the courts in a suit of this character to the finding of the board of water engineers upon the respective rights of the claimants to the use of the water of the Colorado river. The trial court has not passed upon these questions, but, in his order continuing the cause, expressly reserves them for determination upon the trial of the cause.

[1, 2] The only question for our decision is whether the action of the court in continuing the cause for the purpose of obtaining the findings of the board of water engineers amounts to a refusal by the court to proceed with the trial of the case agreeably to the usages and principles of law. Unless we so find, this court is without power or authority to issue the writ of mandamus. Vernon's Sayles' Civil Statutes, art. 1595; Halliburton v. Martin, 28 Tex. Civ. App. 127, 66 S. W. 675. The discretion of a trial judge in the method of the control and disposition of the docket of his court is large, and unless the continuance of a cause by the judge upon his own motion is, under the circumstances, so unreasonable as to be a clear abuse of his discretion, such continuance cannot be regarded as a refusal to proceed with the trial

of the cause agreeably to the usages and principles of law.

[3] We do not think the facts disclosed in the application above set out show such abuse of discretion by the trial judge as would justify this court in holding that by his order continuing the case he had refused to proceed with its trial agreeably to the principles and usages of law. The order recites that it is made as a matter of expediency, and to obtain the benefit of the findings of the board of water engineers upon the respective rights of the parties to the appropriation of the water of the Colorado river. These findings might be of material assistance to the court in determining some of the questions presented in the case, and this is especially so as to the issue of whether relator is entitled to the injunction which the answer of the respondent shows is one of the purposes of the relator's suit. It does not appear how long the case will be continued awaiting the findings of the water board, and we cannot presume that the continuance will cause such unreasonable delay as will amount to a denial of relator's right to a trial of his cause; nor can we presume that, if the water board delays its findings in the matter for an unreasonable length of time, the court will not proceed with the trial without such findings.

After a careful consideration of the application, we have reached the conclusion that it should not be granted, and it has been so ordered.