**SMITH et ux. v. CITY OF DALLAS et al.**

No. 13110.

Court of Civil Appeals of Texas. Dallas.
March 20, 1942.

Rehearing Denied May 8, 1942.

Wm. Andress, Jr., of Dallas, for appellants.

H. P. Kucera, City Atty., A. J. Thuss, Asst. City Atty., E. G. Moseley, Pat J. Howe, Paul T. McMahon, and James H. Walker, all of Dallas, for appellees.

YOUNG, Justice.

This is an appeal from a judgment sustaining general demurrer to the petition for bill of review of Russell E. Smith and wife, and the dismissal thereof on failure to amend. In 1932, plaintiffs' daughter died of accidental gunshot wounds after being taken to Parkland Hospital for treatment, and a suit was later instituted against the City of Dallas and others for damages. On a hearing, their petition was held insufficient on general demurrer. The consequent appeal was, upon transfer, heard by the El Paso Court of Civil Appeals, where judgment was reversed and the suit remanded for trial on its merits: 78 S.W.2d 301. Writ of error was thereupon granted by the Supreme Court, where the action of the El Paso Court was in turn reversed, and the judgment of the trial court (sustaining general demurrer) affirmed: 107 S.W.2d 872.

After above disposition of plaintiffs' suit by the Supreme Court, the proceedings here under review were filed; being, in effect, a bill in equity against the City of Dallas and Dr. J. H. Stephenson, Superintendent of Parkland Hospital, including as additional parties several attorneys who had represented plaintiffs during various stages of the prior litigation. A further detail of the antecedent facts can be omitted as such are fully recited in the preceding appeals.

It is the contention of plaintiffs that they had never been accorded a hearing on the true facts surrounding their original claim for damages, because of unauthorized acts allegedly chargeable to their attorneys of record in the first case; and the bill of review in question attempts, at length, to embody all necessary elements of an equitable action, bottomed mainly on charges of extrinsic fraud, in this: Appellee City had filed a plea in abatement in the original cause, together with a detailed answer to the merits thereof, said plea being heard on stipulated facts; that, in such connection,

it was agreed by all attorneys that Parkland Hospital was being operated by the means set forth in said plea in abatement, which plea, in turn, alleged that the Hospital was a charitable institution, not for gain or profit, but created and organized solely for the purpose of promoting the general health and welfare of citizens of Dallas and Dallas County—a governmental function; and was operating under authority of Ordinances 1005 and 1567, many provisions of which were then recited; and that said agreement of plaintiffs' attorneys, as embodied in the prior judgment (here we quote from appellees' brief), "was to the effect that the hospital was operated by the City of Dallas in the manner set forth in the plea in abatement, and in the plea in abatement it was definitely set forth that the hospital was operated as a charitable hospital to promote the public health and welfare of the citizens of Dallas and Dallas County, and under two ordinances therein set forth. The effect of this agreement was completely to prevent the plaintiffs from establishing the true facts, to the effect that the hospital had been operated proprietarily for many years prior to the enactment of the ordinances. This agreement therefore acted as a surrender of a portion of the plaintiffs' rights, and was beyond the authority of such attorneys to make."

It was further alleged that the decision of the Supreme Court (107 S.W.2d 872, 874) was confined to a construction of statutes on which Ordinances 1005 and 1567 were based; the Supreme Court opinion stating in such connection that "The petition does not show by what authority or under what law the city established and operated the hospital" (in its corporate capacity, or for profit). Appellants' instant pleading (bill of review) then averred that the aforesaid agreement, limiting the sole authority for the Hospital's operation to these two ordinances, deprived him of a material part of his cause of action, in that, the 1907 special charter fully empowered the City to operate a hospital in a proprietary or corporate sense; and, at that early time, it had begun and continued to so operate Parkland, receiving compensation for services furnished for private purposes; and that all enabling provisions of the 1907 charter as amended were still in full force and effect; alleging finally that the agreement referred to precluded plaintiffs from amending to show the City's long possessed proprietary powers relative to the hospital

in question; and thus, the Supreme Court's decision was restricted to the organization and operation of municipal hospitals under later statutes, without reference to the pre-existing proprietary powers of appellee City, under which it had conducted the business of Parkland for several decades.

The so-called unauthorized agreement appears in the judgment dismissing the original suit, and recites: " * * * it was agreed in open court by and between all parties hereto that the various city ordinances and charter provisions set forth and described in said plea in abatement were true and correct, and that it would not be necessary for the defendants herein to offer further proof as to the existence of the respective ordinances and charter provisions and contracts set forth in said plea in abatement. It was further agreed that Parkland Hospital is operated by the means set forth in said plea in abatement and that during the year 1932 the City of Dallas and the County of Dallas each appropriated approximately the sum of $137,000.00 for the support and maintenance of said hospital."

■ The district court overruled this plea in abatement preliminary to the first trial and its action thereon (affirmed by the El Paso Court) was not thereafter considered either by that court or by the Supreme Court in determining the sufficiency of plaintiffs' original petition against the general demurrer then urged and sustained. And the stipulation above is merely quoted to demonstrate that plaintiff was, in no sense, "agreed out of court" by the effect thereof. The arrangement simply waived formal proof of Ordinances 1005 and 1567; agreeing that same were the source of municipal authority to operate a city-county hospital under the general predicate of Art. 4492, Title 71, Ch. 5, Vernon's Civ. St. This construction of the "agreement" complained of is rather conceded in appellants' motion to strike brief of appellee E. G. Moseley, when they allege fraudulent conduct of their first attorneys in failing to discover and plead that Ordinance 1567 and prior city-county agreements thereunder fully empowered the operation of Parkland in a proprietary capacity; and that it was so conducting the institution at the time of the tragedy in question.

But aside from appellants' inconsistent position above mentioned, their assertion that, through fraudulent conduct of their attorneys, the original suit was brought against the City in its governmental rather than in a proprietary capacity, is not borne out by the record. That the prior suit endeavored to fix liability against the City, operating the hospital "for profit" or proprietarily, and that such was the controlling issue in the first suit, is clearly evident from the language of the El Paso Court. It was with reference to alleged proprietary powers of appellee City that Judge Walthall said [78 S.W.2d 304]: "We think the cause of action as stated in the petition was sufficiently stated as against a general demurrer." And upon examination of the same petition, the Supreme Court held: "It is our opinion, assuming the truth of all of the facts alleged in the petition and indulging every reasonable intendment arising upon the petition, that the city in the maintenance and operation of the hospital was exercising a governmental power and was not acting in its proprietary capacity."

Likewise, the prior suit was determined on the basis of a general demurrer, involving merely the competency of plaintiffs' pleading, unaided by any agreement or defensive pleas.

■ Even assuming that the City had proprietary rights regarding Parkland Hospital in its 1907 charter and later ordinances, a point we do not decide, our Supreme Court has expressly ruled in the preceding appeal that, since enactment of Title 71, Ch. 5, Acts 1913, Acts 1927, 40th Leg., Art. 4479, et seq., Vernon's Ann.St., no municipality is authorized to establish or maintain hospitals for revenue or corporate gain. Provisions of this municipal charter, or of ordinances previously in force, cannot be invoked to permit exercise of powers which have been prohibited by state law subsequently enacted: 37 Amer.Jur., Sec. 165, p. 790; State Const., Art. 11, Sec. 5, Vernon's Ann.St.; Vernon's Ann.St., Art. 1165; City of Beaumont v. Fall, 116 Tex. 314, 291 S.W. 202; Hunt v. Atkinson, Tex.Com. App., 18 S.W.2d 594; Dry v. Davidson, Tex.Civ.App., 115 S.W.2d 689, writ refused. Indeed, in the very document relied upon by appellants (Dallas City charter, 1907) is recited: "It shall have and exercise all powers of municipal government not prohibited to it by this charter, or by some general law of the State of Texas or by the provisions of the Constitution of the State of Texas." It follows from the Supreme Court ruling on previous appeal that appellants' bill of review failed to state a meritorious cause of action and is therefore insufficient in law. Plaintiffs below have

sustained a grievous loss, granting the verity of their original complaint; an injury, however, for which there appears no legal redress.

The judgment of the trial court must be affirmed.

Affirmed.