### CITY AND COUNTY OF DALLAS et al. v. CRAMER, Judge, et al.

### No. 13889.

Court of Civil Appeals of Texas. Dallas.

Oct. 17, 1947.

Rehearing Denied Dec. 12, 1947.

H. P. Kucera, City Atty., Robert L. Lattimore, Asst. City Atty., Will Wilson, Dist. Atty., Chas. E. Long, Jr., Asst. Dist. Atty., and Paul T. McMahon, all of Dallas, for relators.

Anderson & Loomis, of Dallas, for respondents.

LOONEY, Justice.

The relators, City of Dallas, County of Dallas, the Hartford Accident & Indemnity Company and Dr. J. H. Stephenson have applied for writs of prohibition and injunction against respondents, the Honorable Wm. M. Cramer, Judge of the 101st Judicial District Court of Dallas County, Tex-as, sitting for the judge of the 95th Judicial District Court of Dallas County, Texas, and Russell E. Smith and wife, Durrell (Frances) Smith, alleging that on the 23rd day of January, 1946, relators were cited to appear before the 95th Judicial District Court of Dallas County, Texas, then and there to answer the petition of Russell E. Smith and wife filed in said court on the 22nd day of January, 1946, the suit being No. 98,645-D, an action in the nature of a bill of review to set aside the judgments in causes, No. 1060–C/D and No. 37,865–D, all of which is shown in detail by certified copies of plaintiffs' original and supplemental petitions, a part of this record.

Relators alleged that the institution and prosecution of said suit by respondents is an attempt on the part of Russell E. Smith and wife to relitigate all of the issues that were determined and adjudicated by this Court against the said Smith and wife in Smith et ux. v. City of Dallas et al., reported in 163 S.W.2d 681, in which the Supreme Court of this State refused an application for writ of error; alleging that the filing and prosecution of the present suit constitutes an interference with the final judgment and pronouncement of this Court on all of the issues there involved.

Relators say that, stripped of all irrelevant allegations, plaintiffs' petition alleges that in April 1932, their daughter Helen Smith was accidentally shot with a thirty-two caliber revolver; was afterwards taken to Parkland Hospital, located in this City, where she was received for treatment; that the hospital attendants discovered a wound in the left arm of the child but failed to examine for, or discover any other wounds; that the child was sent home, where it was subsequently discovered that the bullet had gone through the fleshy part of the arm and entered the child's abdomen, as a result of which the child died; that the City of Dallas and the other relators, or some of them, in the operation of Parkland Hospital, were guilty of negligence substantially in the respects fully set out in the petition; for which the plaintiffs, Smith and wife, sought to recover damages in the sum of $25,288.

Relators allege that, as revealed by the opinion of this Court reported in 163 S.W. 2d 681, also by plaintiffs' original petition filed in cause No. 98,645–D now pending in the court below, Russell E. Smith and wife brought an action against the City of Dallas et al., on the 17th day of March, 1933, alleging substantially the same grounds of negligence and suing for damages as the result of the wrongful death of their child; that the trial court sustained a general demurrer to their petition, being cause No. 1060–C/D; that, on appeal, the case was transferred to the El Paso Court of Civil Appeals where the trial court's judgment was reversed and the cause remanded; see 78 S.W.2d 301; that subsequently the Supreme Court of this State granted a writ of error, reversed the judgment of the El Paso Court of Civil Appeals and affirmed the judgment of the trial court (sustaining the demurrer); see the exhaustive opinion by Judge Smedley, adopted by the Supreme Court and reported in 107 S.W.2d 872. A copy of the petition on which the case was tried is also a part of this record.

Relators allege further that subsequent to the disposition of the first suit filed by Smith and wife, as just related, they filed another suit as shown by this Court's opinion reported in 163 S.W.2d 681, being in effect a bill of review against the City of Dallas and Dr. J. H. Stephenson, Superintendent of Parkland Hospital, and the other relators, again attempting to recover damages for the death of their child; that this court held the City of Dallas, in the operation of Parkland Hospital, was exercising a governmental function and was not acting in any sense in a proprietary capacity; hence that Smith and wife were not entitled to recover. A copy of the petition upon which the latter suit was tried is also a part of this record.

Relators allege that the present proceeding is the third attempt of the respondents, Smith and wife, to litigate the identical question, that is, whether or not the City of Dallas, in the operation of Parkland Hospital, is liable for the alleged wrongful death of respondents' child; that, as shown by the answers of relators filed in the last proceeding which are also a part of this record, they have pointed out to the trial court the facts that the identical questions involved in the present suit have been previously adjudicated against Smith and wife and relators have endeavored, since February 1946, to bring the matter to a conclusion and to have the suit dismissed. Relators presented, as part of their application, a certified copy of the docket sheet of this Cause, as same is pending in the 95th Judicial District Court of Dallas County, Texas, showing among other things that respondents have called upon relators for certain admissions of fact; that on January 28, 1946, relators' motion to strike the cause was granted; thereafter the order dismissing the same was set aside and the suit re-instated; that the docket sheet also shows there have been applications for injunctions and to hold witnesses in contempt; that on April 18, 1947, respondents filed additional requests for admissions and that it has become necessary for relators either to answer such requests or seek relief against such proceedings. It was also shown by the docket sheet that on April 29, 1947, the Honorable Wm. M. Cramer, Judge of the 101st Judicial District Court, sitting for the judge of the 95th Judicial District Court, heard and took under advisement relators' exceptions to respondents' pleadings, but no ruling on said exceptions has been made as yet.

Relators state that unless a writ of prohibition is granted, and unless respondents, Smith and wife, are enjoined from further proceedings in this Cause, and unless the Honorable Wm. M. Cramer is directed by this Court to take no action in this case other than to dismiss and strike same from the docket, relators will continue to be harassed by additional motions and proceedings, and called upon to make court appearances and to argue and reargue the law which has heretofore been settled and finally determined by this Court. Relators allege that even though the trial court should sustain the exceptions urged to respondents' pleading now being held under consideration, Smith and wife will again ask leave to amend and will continue indefinitely to harass relators. Relators Hartford Accident & Indemnity Company and Dr. J. H. Stephenson allege that they have been subjected to the expense of em-

ploying counsel, and will be subjected to additional expenses and annoyances in resisting and opposing the various amendments of Smith and wife due to the failure of the trial court to promptly sustain relators' exceptions and dismiss and bring said Cause to an end. Relators also allege that even though the trial court should promptly and finally sustain the exceptions and dismiss the action now pending before it, and even though respondents, Smith and wife, should decline to amend, relators verily believe and allege that said respondents would thereupon present an appeal to this Court and seek to relitigate the identical questions previously adjudicated against them; and that, in such event, it would be necessary for relators to file appropriate briefs and appear in opposition to said appeal, all to their great annoyance and expense; alleging that the prosecution of this Cause in the trial court constitutes an interference with the final judgment of this Court and that relators have no speedy and adequate remedy at law, by appeal or otherwise; wherefore, they pray that this Court issue its writ of prohibition commanding the Honorable Wm. M. Cramer, Judge of the 101st Judicial District Court of Dallas County, Texas, to desist from any further proceedings in this action other than to dismiss the same and, also, to issue a writ of injunction commanding the said Russell E. Smith and wife, their agents and attorneys, to desist from any further proceedings in this or any similar action in which they might attempt to relitigate the issues decided by this Court, as revealed in its opinion reported in 163 S.W. 2d 681.

Relators' allegations are all under oath; their accuracy, in a large measure, we think is revealed by the opinions of the Supreme Court on the first appeal and by the opinion of this Court on the second.

Respondents' petition in the instant case, now on file and under consideration by the court below, is quite lengthy; is replete with allegations of extraneous, immaterial and evidentiary matters and interspersed with arguments. We are of opinion that when these elements are eliminated, the remaining allegations of the petition present essentially and in legal effect, the same issues of fact and of law put in issue on the two previously filed cases that were directly adjudicated and final judgments rendered thereon adverse to the contentions of respondents Smith and wife.

We are of opinion that respondents have had their day in court and that the judgments heretofore rendered against them, presumably correct, are conclusive. It follows, we think, that relators are not only entitled to the peace they seek, but, as stated in 26 Tex.Jur. sec. 359, pp. 25–26, "The good of society and the preservation of rights and order require that when once the claims of parties have been determined by the ultimate tribunal provided by law for their adjudication, the matter should pass from the field of strife forever. Any other rule would but fill the courts with causes which have been once determined and would render all rights of property uncertain and the most solemn judgments a mockery."

██ We are authorized by the provisions of Art. 1823 R.C.S., Vernon's Annotated Civil Statutes, to issue all writs necessary to enforce the jurisdiction of this court and where, on appeal, as in the instant case, we affirmed the judgment of the trial court, it became, in legal effect, the judgment of this court; hence we are authorized by the issuance of all necessary writs to protect said judgment from any assault upon its validity or effectiveness by an inferior court. This doctrine is thoroughly well established in this State by an unbroken line of decisions, among others, the following: Halbrook v. Quinn, Tex.Civ.App., 286 S.W. 954; Browning-Ferris v. Thompson, Tex.Civ.App., 55 S.W. 2d 168; Maxwell v. Bolding, Tex.Civ.App., 57 S.W.2d 874; and Houston Oil Co. v. Village Mills Co., 123 Tex. 253, 71 S.W.2d 1087.

██ It follows that we are of opinion relators are entitled to the relief sought; therefore the writs will issue as prayed.

Application granted.

BOND, Chief Justice (dissenting).

This is an original application filed in this Court for writ of prohibition and injunction against the Honorable Wm. M.

Cramer, Judge of the 101st Judicial District Court of Dallas County, Texas, to desist from any further proceedings other than to dismiss a suit filed in the 95th District Court by Russell E. Smith and wife, Durrell (Frances) Smith, against the City of Dallas, County of Dallas, Hartford Accident & Indemnity Company and Dr. J. H. Stephenson, for damages alleged to have been the result of alleged specific negligence on the part of the defendant-relators, proximately causing the death of plaintiffs' minor child. And the relators further seek to enjoin the respondents, their agents and attorneys to desist from further proceedings in said suit or *"In any similar action therein in which they attempt, or might attempt to litigate such cause of action."* (Italics mine)

The suit in question was filed on January 26, 1946, and on February 2, 1946 the defendants therein filed answer, numerous special exceptions, general and special denials and pleas of res judicata; and on April 26, 1947, filed amended answers substantially as in their original answer. During the interim, between the filing of the suit and the defendants' answer, the plaintiffs and defendants took numerous ancillary orders, invoking, among other things, the jurisdiction of the court below to require defendants' admission of facts. On April 29, 1947, the court heard the exceptions and pleas, took the matters under advisement and is now holding determinative decision. The record discloses that the defendants theretofore had never called the court's attention to their pleas of res judicata, or sought order or judgment thereon, but, on the contrary, in briefs on their motions for the writs of prohibition and injunction, they state—I quote verbatim:

"That unless this writ of prohibition is granted and unless respondents Russell E. Smith and wife Durrell (Frances) Smith, are enjoined from further proceeding in this cause and unless the Honorable Wm. M. Cramer is directed by this Court to take no action in this matter other than to dismiss and strike the same from the record, the petitioners will continue to be harassed by additional motions and proceedings and will continue to be called upon to make court appearances and to argue and reargue the law in this cause, which has been settled and finally determined by this Court. Petitioners further state that even though the Trial Court should sustain the exceptions which are now held under advisement, the said Russell E. Smith and wife will again ask leave to amend their petitions and pleadings and will continue, for a long time in the future and indefinitely, to harass petitioners; that your petitioners Hartford Accident & Indemnity Company and Dr. J. H. Stephenson have been subjected to the expense of employing counsel, and all petitioners will be subjected to additional expense and annoyance in resisting and opposing the various amendments of the said Smith and wife, due to the failure of the Trial Court to promptly sustain petitioners' exceptions and motions to dismiss the cause and bring the same to an end. Petitioners further state that even though the Trial Court should promptly and finally dismiss the action pending before it, and even though plaintiffs should decline to amend, they verily believe that respondents would thereupon present an appeal to this Court and would seek to relitigate the identical questions previously adjudicated against them and, in such an event, it would be necessary for petitioners to file appropriate briefs and to appear in opposition to respondents' appeal, all to their great annoyance and expense. The prosecution of this cause in the Trial Court constitutes an interference with the final judgment of this Court. Your petitioners have no speedy and adequate remedy at law by appeal or otherwise."

The Constitution of Texas makes out a complete judicial system and defines the province of each of the designated courts. The district court is preeminently the trial court of general jurisdiction. The Court of Civil Appeals is primarily that of an appellate court of special and limited jurisdiction. Such courts may issue writs of mandamus and all other writs necessary to enforce the jurisdiction of said courts.

Prior to attaining jurisdiction over a cause, courts of civil appeals will not award an injunction, or obstruct by writ of prohibition the action of a district court in the exercise of its judicial functions, when

such writs would be tantamount to the exercise of original jurisdiction. Taylor v. American Trust & Savings Bank, Tex.Civ.App., 265 S.W. 727; Texas Electric & Ice Co. v. City of Vernon, Tex.Civ.App., 254 S.W. 503; Fulmore v. Benson, Tex.Civ.App., 245 S.W. 124; Ford v. State, Tex.Civ.App., 209 S.W. 490; Pollard v. Speer, Tex.Civ.App., 207 S.W. 620; Tipton v. Railway Postal Clerks' Inv. Ass'n, Tex.Civ. App., 170 S.W. 113; Boynton v. Brown, Tex.Civ.App., 163 S.W. 599. An injunction is authorized only when it will be in aid of the jurisdiction of the court. Jurisdiction is stated to be the authority by which judicial officers take cognizance of and decide causes, and this includes the power to determine the legal results to follow, from the facts pleaded and proven, to hear and determine the matter in controversy according to established rules of law and to carry the sentence or judgment of the court into execution.

The jurisdiction of the district court includes the power to determine, either rightfully or wrongfully; it makes no difference how erroneous the decision may be, if the district court has jurisdiction of the parties and subject matter, its determination of the controversy is clearly within that court's exclusive power. So, in the case at bar, there is no question but that the controversy between plaintiffs and defendants is properly pending before the district court and is within the jurisdiction of that court; and until that court, in the exercise of its judicial discretion and under the rules of procedure of this State, makes a final decree sustaining or refusing the defendants' pleas of res judicata, thereby retaining or dismissing the suit, and the aggrieved party or parties perfect an appeal to this Court challenging the decision of the district court, has this Court jurisdiction to act; otherwise this Court usurps extra-judicial power in an independent action to compel the district court to do that which for some undisclosed reason it has delayed in doing. The mere filing of suit in the district court, even if such suit be subject to pleas of res judicata based upon former judgments of that court or of the Court of Civil Appeals, or even the Supreme Court, such would not constitute obstruction or interference with the judgments of such courts as would render the judge of the district court subject to writs of prohibition or injunction by this Court.

In the case of Farrell v. Young, then District Judge, now Justice on this Court, 23 S.W.2d 468, 470, the relator Farrell sought writ of prohibition and injunction against the judge, similar in many respects to the action here. Chief Justice Jones of this Court announced the rule:

"The mere filing of the suit by respondents in the district court of Forty-Fourth judicial district, and service of citation on relator, even if such suit be subject to the plea of res judicata, based on the judgment of this court, would not constitute such an obstruction of the jurisdiction of this court, over the said judgment, as would render the judge of the district court subject to a writ of prohibition. Relator would be left undisturbed, except by the annoyance of the suit, in the full enjoyment of the rights secured by the judgment of this court. Milam County Oil Mill Co. v. Bass, supra [106 Tex. 260, 163 S.W. 577, 578]. In the cited case the Supreme Court declares the rule of law, above announced, in the following language: 'The power of a court to enforce its jurisdiction does not include an authority to prevent the prosecution of any suit to which a judgment of the court may be an effectual bar, but which, beyond presenting an issue as to the conclusiveness of the judgment upon the asserted cause of action, makes no attempt to disturb it, or to interfere with its execution or the exercise of rights established by it, as such a suit does not conflict with the exercise of that power which constitutes jurisdiction in the court, the power to hear and determine the cause and enforce the judgment rendered, and therefore does not violate its jurisdiction. The assumption of such right would invest a court not merely with the control of its own judgments and authority to enforce its jurisdiction, but with a further power to govern other courts in the exercise of their lawful jurisdiction; and the result would be that the issue of the conclusiveness of a judgment upon what is urged as a distinct cause of action could

never be determined except by the court that rendered it. The proper test of the question therefore is, not whether the suit recognizes or repudiates the effect of the judgment, since that does not necessarily involve the jurisdiction of the court, but whether it amounts to an interference with its due enforcement and therefore invades a jurisdiction it is forbidden to trench upon.' "

In Peck et al. v. Berry et al., 143 Tex. 294, 184 S.W.2d 272, 274, 156 A.L.R. 949, reversing this Court, 181 S.W.2d 116, the plaintiff's suit was, on hearing, dismissed—the allegations being wholly insufficient to state a cause of action; later, another suit embodying the same allegations was dismissed for procedural reasons; and then, later, a third suit of similar nature was filed. To which last suit the defendants then urged, among other defenses, a plea of res judicata because of the two prior suits of similar nature having been dismissed from which no appeal was taken; hence, became final judgments and barred under the doctrine of res judicata. The trial court sustained the plea and dismissed the suit. On appeal to this Court, the majority (the writer here voiced dissent) sustained the judgment of the trial court, 181 S.W.2d 116. The Supreme Court granted application for writ of error and, in opinion by Commissioner Folley, now a member of the Supreme Court, that court held:

" * * * the doctrine of res adjudicata has no application in this case. A judgment of dismissal for failure to comply with the rule for costs (as was done in that suit) is not ground for the plea of res adjudicata to a similar suit thereafter filed, since the dismissal on this ground does not adjudicate the rights of the parties. (Citing authorities) Neither is the doctrine applicable ordinarily by reason of the mere sustaining of general or special exceptions to a petition. (Citing authorities) A ruling sustaining a demurrer or exception is merely an interlocutory order and decides nothing but the sufficiency of the pleadings." (Citing authorities.)

So, in the case at bar, the two former suits decided nothing other than the sufficiency of plaintiffs' petition. The fact is-

sues involved were not decided and have never been decided by the trial court or the appellate courts; and if, perchance, the suit here involved is subject to the fate of the two former suits, of which it is not our province here to determine, it may well be expected that the Honorable Wm. M. Cramer will well and truly meet the issue and in due time, under the principles and rules of law, decide as to whether plaintiffs' petition states a cause of action or is subject to the doctrine of res judicata.

Courts and judges thereof are not infallible, as recognized by law in allowing appeals by aggrieved parties. Hence, right or wrong, the appellate courts have no power to determine the issue involved or the sufficiency of the petition, or any other ancillary proceedings in advance of decision by the trial court and an appeal duly perfected to this Court.

There is nothing shown in relators' motion to suggest that Judge Cramer has been negligent or arbitrary in disposing of the issue in suit, and the mere fact, as alleged by the relators, that "Unless the Honorable Wm. M. Cramer is directed by this court to take no action in this matter other than to dismiss and strike the same from the docket, the petitioners will continue to be harassed by additional matters and proceedings and will continue to be called upon to make court appearances and to argue and reargue the law in this cause, * * *; that even though the trial court should sustain the exceptions which are now held under advisement, the said Russell E. Smith and wife will again ask leave to amend their petitions and pleadings and will continue for a long time in the future and indefinitely to harass petitioners; * * * that even though the trial court should promptly and finally dismiss the action pending before it, and even though plaintiffs should decline to amend, they verily believe that respondents would thereupon present an appeal to this Court and would seek to relitigate the identical questions previously adjudicated against them" shows conclusively that the relators have clear, complete and adequate remedy at law which, alone, prevents the issuance of writs compelling respondents to desist from fur-

ther proceedings in said suit or, as relators allege, "in any similar action therein in which they attempt, or might attempt to litigate such cause of action."

Even if this Court had the power, and the petition showed equitable rights for the remedy sought, and the trial court should obey the mandate of this Court, which I have no doubt he will, and summarily dismiss plaintiffs' suit, then has this Court the power by injunction to prevent an appeal from such final judgment of dismissal? Certainly the aggrieved party would have a right of appeal which cannot be abridged by any court.

Discretion of a trial judge in method of control and disposition of the docket of his court, is large; and unless continuance, of a cause on his own motion, or tardiness in decision, as alleged here, is so unreasonable as to be clear abuse of discretion, the Court of Civil Appeals cannot issue writs of mandamus, prohibition or injunction to compel the judge to act, either to proceed with the trial or dismiss the suit. Matagorda Canal Co. v. Styles, Tex.Civ.App., 207 S.W. 562.

I do not think the facts disclosed in the application show that the Honorable Wm. M. Cramer is guilty of abuse of discretion as to justify this court in holding that he has refused to proceed with the trial, agreeable to the principles and usages of law. The record here shows that the relators, defendants in the suit in question, have never sought to have the trial court to set the cause for trial; and, although the suit was filed in January 1946, the defendants did not urge action on their exceptions and plea of res judicata until April 29, 1947, when the court, after hearing the exceptions and plea, announced that it would take the matter under advisement. And, furthermore, the petition for writs of prohibition and injunction filed in this Court only on September 16, 1947, was the first evidence of relators' aggrievement at delay by the trial court manifested. Relators have no equitable right to the injunctive relief; their petition for injunction and prohibition should be dismissed and the writs denied. I respectfully dissent from the majority.

## On Rehearing.

LOONEY, Justice.

From the original opinion and records of the previous litigation referred to therein, it will be observed that the suit pending below against which the relief sought herein is directed, is a bill of review to review a bill of review to review the judgment of the Supreme Court. Justification for the belated attack upon the previous litigation is the alleged fraud, recently discovered by respondents, of relators committed upon the trial court, the Court of Civil Appeals, the Supreme Court and upon the respondents in representing that the City of Dallas and the County of Dallas operated Parkland Hospital pursuant to a valid contract for such joint operation; whereas, such representation was false, in that the joint operation was not in accordance with a valid agreement entered into in pursuance of the statute. Therefore respondents contend the City operated the hospital alone for profit in a proprietary and not a governmental capacity; hence liable to respondents in damages sustained as alleged.

We fail to find the existence of any fraud, either actual or constructive, or even that such a result as contended by respondents would have followed even if an invalid contract between the City and the County had been entered into, in view of the fact that they acted jointly in conducting the hospital. Their relationship to the public would have been precisely the same as if a perfectly statutory contract had existed, and no one except a party to the contract could in any event have pleaded a defect or taken advantage of same.

The first suit instituted by respondents, Cause No. 1060 filed in a district court of Dallas County, was against the City of Dallas alone. The City filed a plea in abatement alleging that Parkland Hospital was being jointly operated by it and the County of Dallas under a contract; therefore Dallas County was a necessary party to such litigation. At the instance of respondents, the trial court overruled this plea. Thereupon attorneys for the City urged a general demurrer to the petition, which being sustained and the cause dismissed, an ap-

peal was prosecuted to this Court; later the cause was transferred to the El Paso Court of Civil Appeals which reversed the judgment of the trial court and remanded the cause; whereupon the Supreme Court granted a writ of error, reversed the judgment of the Court of Civil Appeals, and affirmed the judgment of the trial court.

■ The law announced by the Supreme Court in the exhaustive opinion of Judge Smedley, in our opinion, was conclusive and should have composed this litigation definitely. In view of that, we will lengthen this opinion by making a liberal quotation from the opinion, as we believe it is a complete answer to the contention of respondents. Among other things the court said: "The petition alleged that the hospital was maintained for revenue and profit to the city. The hospital was constructed and operated under a statute giving to cities the power to erect and establish hospitals, and control and regulate the same, and to do all acts necessary or expedient for the promotion of health and the suppression of disease. The court construed the statute as authorizing the city to maintain a hospital either as a charity or as a means for the promotion of the general health of all its residents and the suppression of disease among the inhabitants, and for no other purposes, and said with reference to the allegation that the hospital was operated for revenue and profit: 'The city did not possess the power, in its private or proprietary capacity, to engage in the business of conducting a hospital for revenue. If the municipal authorities have unlawfully entered upon a course of that character, the city cannot be made liable for negligence on their part or on the part of those employed by them in carrying out their purpose.' McQuillin, citing Tollefson v. Ottawa, says: 'If a municipality has power to, and does, maintain a hospital for revenue, there is no doubt but that it would be liable for the torts of persons employed about the hospital, but if it conducts the hospital for revenue but without power to do so, it is not liable.' McQuillin's Municipal Corporations (2d Ed.) Revised Volume 6, p. 1170, § 2840. In our opinion the operation of the city's hospital for revenue is not merely the doing of a lawful or authorized act in an unlawful manner, but is a business so essentially different from its operation as a public institution in the promotion of the health of the people that it is wholly beyond the powers of the municipality. The act of the city officials in operating the hospital for such purpose being ultra vires, no liability arises against the city if a tort is committed in connection therewith. (Citing authorities) The petition alleges as one of the acts of negligence proximately causing the death of the plaintiffs' child that the city was negligent in employing and placing in charge of the hospital one who was not fully qualified and capable of administering the proper kind of treatment to emergency patients. This allegation does not take the case out of the rule which exempts cities from liability when exercising governmental powers. The city officials in selecting the superintendent of the hospital were acting as agents of the general public and the doctrine of respondeat superior does not apply." (Citing authorities.) See City of Dallas v. Smith et ux., 130 Tex. 225, 107 S.W.2d 872, excerpt copied from column 1, page 879.

We think it follows from the doctrine announced by the Supreme Court that even if the City had been operating the hospital on its own responsibility without the county being a party thereto, the rule regarding liability would have been the same, that is, the City would have been acting in a governmental and not proprietary capacity, hence not liable. That precise question was decided by the Supreme Court in the case of Gartman et ux. v. City of McAllen, 130 Tex. 237, 107 S.W.2d 879, decided by the Supreme Court same day decision was rendered in the Smith case, supra. In the Gartman case the hospital was owned and operated by the City of McAllen, alone, and not in conjunction with the county in which McAllen is located. Seemingly there is no distinction between the liability of a city operating its hospital alone, and one operating in conjunction with the county under statutory authority.

The record discloses that this litigation has persisted for about fifteen years; has been to the Supreme Court twice; respondents have had their day in court, in

fact, two days; and in our opinion the law has been definitely settled against all contentions heretofore made by respondents, as well as those now urged before this court. We think this litigation should be brought definitely to an end, and it seems that the only way to accomplish that result is for this Court to grant the relief sought, as heretofore ordered.

Respondents' motion for rehearing is overruled.

BOND, C. J., dissents.